### HOGAN v. HOUSTON BELT & TERMINAL RY. CO.

(Court of Civil Appeals of Texas. Galveston. May 10, 1912. Rehearing Denied June 13, 1912.)

1. NEGLIGENCE (§ 23*) — USE OF LAND — PLACES ATTRACTIVE TO CHILDREN—LIABILITY OF OWNER.

Where an owner maintains on his premises near where children live machinery which is unusually attractive to children, an inference is warranted that he invites children to go on his premises, and he must exercise care to avoid injury to the children, and he is liable for injury to them without proof of an intent on his part to injure them, or an express invitation to them to enter on his premises.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 33, 34; Dec. Dig. § 23.*]

2. APPEAL AND ERROR (§ 866*)—QUESTIONS REVIEWABLE—DIRECTION OF VERDICT.

The court on appeal from a judgment entered on a directed verdict for defendant will only consider the question as to whether under any view of the evidence plaintiff is entitled to recover.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3467–3475; Dec. Dig. § 866.*]

3. NEGLIGENCE (§ 136*) — USE OF LAND — PLACES ATTRACTIVE TO CHILDREN—LIABILITY OF OWNER—QUESTION FOR JURY.

Whether an owner maintaining a machine attractive to children living in the vicinity impliedly invited the children to go on the premises to play with the machine, thereby imposing on him the duty of exercising care to prevent injury to the children, held, under the evidence, for the jury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

4. NEGLIGENCE (§ 23*) — USE OF LAND — PLACES ATTRACTIVE TO CHILDREN—LIABILITY OF OWNER.

Where an owner maintained on his premises near where children live a machine unusually attractive to children, and left it exposed and entirely unguarded, and the children openly, notoriously, and frequently entered on the premises to play with the machine, the owner could not escape liability for injury to a child caused by the machine, on the ground that he or his employés had no knowledge that children resorted to the place and played with the machine.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 33, 34; Dec. Dig. § 23.*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Action by Clarence Hogan, by next friend, against the Houston Belt & Terminal Railway Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

L. E. Blankenbecker, of Houston, for appellant. Andrews, Ball & Streetman, of Houston, for appellee.

REESE, J. This is a suit instituted by Camilla Hogan, as next friend for her minor son, Clarence Hogan, against the Houston Belt & Terminal Railway Company to recover damages for personal injuries alleged to have been suffered by the said Clarence as the proximate consequence of the negligent act of the railway company. The damages were laid at $2,500. When the evidence was concluded, the court instructed the jury to return a verdict for the defendant, which was accordingly done. From the judgment on such verdict the plaintiff appeals.

It is alleged in the petition that the servants of appellee placed alongside of the track of appellee, and within a few feet of where Mrs. Hogan lived, a pile of lumber, and on top of the same a machine which, on account of its construction, was unusually attractive to children, who were in the habit of resorting to the place and playing with the machine; that the use of this machine as a plaything by children of tender years was attended with danger, both on account of its construction and on account of the unstable manner in which it was placed on the pile of lumber, whereby it was liable to topple over and injure them if they took hold of it. The machine is described substantially as in the testimony of the witnesses hereinafter set out. It was alleged that the dangerous character of the machine, its peculiar attractiveness to children, and that children were in the daily habit of playing with it were all well known to appellee's agents and servants, who placed the machine in the place it was, and that the machine had been allowed to remain in this position for more than a week before the accident to the said Clarence. It was further alleged that while the said Clarence, who was eight years old, with other small children, was playing with the machine by turning the crank by means of which the wheels composing the machine in part were made to revolve, the said Clarence caught hold of the machine in some way to save himself from falling, and in this way his fingers were caught between the cogs on the wheels, and one of them was so mashed and broken that it had to be amputated between the second and third joints. Appellee pleaded, in addition to the general denial, that the said Clarence was a trespasser on its property with the knowledge and acquiescence and

through the negligence of his parents, and that no circumstances existed which imposed any duty upon appellee to protect him, or with regard to the unauthorized use by him of the machine by which he was alleged to have been injured.

The following is a brief statement of the testimony adduced upon the trial.

Camilla Hogan testified: "This boy is my son. On the 18th of May, 1910, I lived at 2211 Walker avenue. The Houston Belt & Terminal Railway tracks are close to my house. I guess it is about 35 feet. I don't know how close the right of way comes to my house. * * * About the 18th of May, 1910, there was a machine up there near my house. The machine was put on a lot of old ties when I came home. I came home on Saturday, and brought my children, and all sorts of railroad stuff was piled up in front of the door, and on top of this there was a piece of machinery that had a wheel to it, and one wheel went down this way, and another one was over on the other side, and the children was always playing with it when I come back [from a month's visit]. That was right at my house. I had to turn to go out from my gate, and it was sitting right there. * * * It was about two feet off the ground, I guess. It was a round piece of iron that went around. I don't know what you would call it, but it had teeth in it, and the other wheel turned over it, and went around, and it would catch in the wheel. When you turned the handle over, the other wheels would go around. * * * It was something like a coffee mill. * * * It was a large piece of machinery. There are quite a number of people who live in the houses along the right of way. There was nothing there to keep the children from getting to this machine. They would go there to the end of the ties and get on there, and commence turning the machine. I have seen children there turning the machine besides my children. When I would leave home, I would tell my children to stay in the yard, but, when I was not there, they would go out and play there anyhow. I would see other children out there besides them playing with the machine. I come home Saturday night, and Sunday evening I saw children out there playing, but Sunday morning I was not at home. I was there on Monday until Monday evening, and I saw children playing out there. I don't know how many times I seen them out there. My baby got his finger caught on Tuesday evening. I wasn't there but two evenings, as I worked out in the daytime, and, when I would get home, there would be children out there playing. I never did see my children out there playing at all. I was working. I was not at home at the time of the accident. * * * I had never seen my little boy playing with this machine. I had never seen either one of my little boys playing with it. I saw several other children playing with it. I saw that in the evenings after I would come home. I saw that on Monday and Sunday evenings, but I hadn't noticed nobody on Tuesday, because I didn't stay at home but a few minutes. Prior to that Sunday and Monday I had not seen any little boys playing out there, for I had just come home [from a month's absence]. I came back to Houston on Saturday night, and I saw the machine on Sunday morning for the first time. The boy was hurt on the following Tuesday. There is no vacant property out there in front of my house. There is just tracks out there. * * * There is a lot of travel along the tracks there in front of my house."

Annie Ellis testified: Camilla Hogan lives just back of me. We both live on the same lot. Her house is on the back of the lot, and my house is on the front of the lot. About the month of May, 1910, May 18th, I saw a flat car with a lot of lumber and one thing and another on it and a piece of machinery brought down there near my house. They unloaded the lumber, and then they put this piece of machinery onto this lumber. I don't know what kind of a machine that was. It had a big wheel that turned, and then it had some other little wheels inside of it. I guess it was about four feet high or a little more from the ground. It was laying up on the lumber. I guess the lumber was about waist high to me. And these posts were not level, the ties and things they use in the railroad. This machine was set up on top of that. I guess that was about 3 or 4 feet from the track, and 18 or 20 feet from the gate that opens in Camilla Hogan's yard. I saw that piece of machinery when it was brought there. I saw the men unloading it there. * * * They bring all their stuff in by switch engines and put the cars there, and then they unload them. I remember the day Clarence Hogan was hurt. I saw this thing (machine) jump up, and he was pulled over, and his finger was cut off, and he come running to me. I don't know how long this machine had been out there, about a week. I noticed on several occasions that boys would go there and play with the thing. * * * There was colored boys and Mexicans that would stop there and play with this machine. They would turn that wheel, and see it roll, and put paper in it, and one thing and another. I have turned it. I turned it out of curiosity. I just wanted to see what was in it. I don't know how the thing was made. It was made something like a coffee grinder, if you would set it up straight, but it was a tall concern. * * * It made a kind of clicking noise when it was turned. It was easy to turn for me. I guess these boys out there played with it every day. When I was at home, I would see the boys out there on the lumber, and, if there was nothing else to do, they would get up on the lumber and walk around there, and, that thing being there to turn,

they stopped there and turned it, and then would go off about their business. If they didn't have but a few minutes, they would stop there. I noticed that very often. There was travel over those tracks there all the time. There were children up and down there and everybody else. That is the only way to go, on this track. They have got it all knitted in there so. The Houston Belt & Terminal employés being transfers there. They are up and down there off and on all the time. I have seen switchmen there. They would switch up there in the yard right in front of her door. The engine that brought that machine up there was a Houston Belt & Terminal Company's engine. I know some of the switchmen's faces that bring the lumber up there. I have seen the switchmen there on different occasions. I have seen them moving cars and carrying cars from places there in the yard. When this little boy got hurt, it fell off and throwed him off. * * * This piece of machinery was something like on the edge of the wood there when the little boys was playing with it. If you would get it too far, it would make a tilt. It is not a fact that it was standing up there perfectly straight. The end was so if you weighted it too much on that end, it would naturally bobble, because, when I turned it, I noticed it bobble. I did not put my weight on that end at the time I turned it. It bobbled when I turned it. At the time this boy got hurt, he was up there, and it seemed to me like he was sticking something into this thing. I wasn't paying much attention until he fell, but I could see that the bigger boy was turning the wheel. He was fooling with the wheel. Camilla Hogan's yard, or the fence around it, is about two feet at its closest place from the railroad track, but that further toward the southeast the track gets further away from the house. In other words, that a corner of the house sets very close to the tracks, and the space to the southeast of the house and between the house and the tracks is always blocked with a lot of ties and iron and junk, and I have often seen children playing there."

Clarence Hogan, the minor plaintiff, testified: "My finger is off between the second and third joints. I was out there playing, and my brother was turning the thing, and I was up on it putting some stuff in it, and it tilted and fell and I grabbed to catch the thing, and it was turned and it caught my finger. I fell off on the ground by the machine. I was standing on it and my brother was turning the wheel, and he turned it loose, and he turned around, and it was still turning and I fell. I fell because it tilted. I don't know how many times I had played with that machine. My brother is older than I am. He is getting on 11 years old. There was another little boy playing there with us. I was putting paper in it while my brother was turning it. I was standing up, and the machine tilted and I was falling, and I grabbed to catch it, and it caught my finger. It was still turning. My brother had turned around."

It was agreed between the parties that the property where the machine was at the time the plaintiff was hurt was the property of the defendant.

[1] The question presented by the assignments of error is whether this evidence presented an issue as to the liability of appellee which should have been submitted to the jury. In the case of Railway Co. v. Edwards, 90 Tex. 65, 36 S. W. 430, 32 L. R. A. 825, cited by appellee to sustain the action of the trial court, the plaintiff, a child eight years old, was injured while playing upon a pile of railroad ties in the yard of the defendant. One of the ties fell upon and injured plaintiff. There is a marked distinction between such a case and the one here presented. The court while criticising the doctrine of the turntable cases does not overrule, or even limit, that doctrine. The pile of ties could not be said to be unusually attractive to children, nor that children would likely be injured by playing upon them. In its opinion, referring to the turntable cases, the court says: "The ruling in these cases must be justified, we think, upon one of two grounds: Either that the turntables possess such peculiar attractiveness as playthings for children that to leave them exposed should be deemed equivalent to an invitation to use them, or that, when unsecured, they are so obviously dangerous to children that, when it is discovered that they are using them, it is negligence on the part of the owner not to take some steps to guard them against the danger." Also: "Applying the principle announced to the facts of this case, we are of opinion that the plaintiff was not entitled to recover. There was no peculiar allurement about the yard of the defendant company. Though the ties may have been inartistically piled, we do not see that any danger should have been anticipated from the manner in which they were stored. A witness swore that children seemed fond of playing about the lumber." It was also shown that a watchman of the defendant company had ordered the children away from the pile of lumber.

In Dobbins v. Railway, 91 Tex. 60, 41 S. W. 62, 38 L. R. A. 573, 66 Am. St. Rep. 856, a child three years old escaped from a section house, and, wandering upon the premises of the defendant, fell into a pool of water, and was drowned. The defendant was held not liable, principally upon the ground that there was no evidence in the record from which the jury could have found that there was an invitation to the child to go upon the premises. Upon this point what is said by the Supreme Court in Railway Co. v. Morgan, 92 Tex. 98, 46 S. W. 28, is pertinent. In that

case a child was injured while playing upon an unguarded and unlocked turntable. As showing the distinction between the pool of water in the Dobbins Case and the pile of railroad ties in the Edwards Case, the court says: "Where, however, the owner maintains upon his premises something which on account of its nature and surroundings is especially and unusually calculated to attract, and does attract another, the court or jury may infer that he so intended, and hence invited him. Where one exhibits on his own land, near where children are likely to be, pictures or unusually attractive machinery, etc., he can expect no other result than that it will appeal to the known instincts of a child of immature judgment and cause him to venture thereon, just as the dog was drawn into the baited trap by the scent of meat. Townsend v. Wathen, 9 East, 277. Thus we see (1) that a general duty is imposed upon an owner, as a member of society, not to intentionally injure any one; and (2) that, if he invites one on his premises, an additional duty is imposed to use care to avoid his being injured, and that while the first duty exists in all cases, and its violation may be shown by direct evidence or by circumstances, the second as well as its violation may be shown by direct evidence, or by circumstances. In so far as the turntable case and other cases involving injuries upon dangerous machinery or private property may be considered to lay down the broad proposition that the owner can be held liable without proof of either an intent to injure or an invitation, as these have been above explained, we do not think them based upon sound principle."

The case of Construction Co. v. Bostick, 98 Tex. 243, 83 S. W. 12, is not in point. That case in the Supreme Court turned upon the refusal of the trial court to give a charge requested by appellant presenting the defense based upon the evidence that the foreman in charge of the gin had not only ordered the plaintiff, a child eight years old, away from the gin, but had actually put him out of the house and warned him to stay away from the gin, and that the child had re-entered the house suddenly and without the knowledge of the foreman, and while attempting to handle the cotton seed as it fell from the gin got his hand caught and injured. There is nothing in the opinion really applicable to the facts of the present case, as will readily be seen by an examination of it. After the decision of the Supreme Court in the Morgan Case, another branch of the same case came before this court, being an appeal from a judgment for the minor child injured while playing around the turntables. The case first referred to being a suit by the mother of the child based upon the same facts. In the case last cited this court affirmed the judgment of the trial court, and a writ of error was refused by the Supreme Court. For this latter reason, and because there is nothing in the opinion in conflict with the case cited by appellee and heretofore discussed, we have no hesitation in adopting the ruling by this court as applicable to the decision of the present case. We quote from the opinion: "The fact that the turntable was left unlocked added to its attractiveness to children, and, taken in connection with the other matters and things pleaded in the petition, such as the ease with which the turntable could be revolved, its unusual attractiveness as a playing place for children, and the fact that children of the town, with the knowledge of appellant, went upon said turntable and rode thereon when it was left unlocked, rendered the leaving of same unlocked one of the special facts from which an implied invitation could be established. The implied invitation which is established by facts of this character arises from, or is based upon, the doctrine of estoppel. When it is shown that the owner has placed upon his land unusually attractive machinery, and that within his knowledge children are thereby induced to go upon his premises, and the owner knows that leaving said machinery unfastened adds to its attractiveness, he will not be heard to say that children thus induced to go upon his premises were not there by his consent or invitation." Railway Co. v. Skidmore, 27 Tex. Civ. App. 329, 65 S. W. 215, decided by the Court of Civil Appeals of the Fourth District, is also instructive upon this question of an implied invitation to the plaintiff in the present case. This was also a turntable case, in which a judgment for the plaintiff was affirmed. The court upon this point say: "Special charge No. 11, the refusal to give which is made the basis of the fourth assignment of error, in effect withdraws from the consideration of the jury the invitation, which may be inferred from the nature and surroundings of the turntable making it specially and unusually calculated to attract children of immature judgment, given by appellant to the appellee to go on the turntable, and requires them to find for appellant 'if the company, in locating the turntable, was making such use of its property as other railway companies were doing throughout the country.' The use made of property in locating a turntable upon it is not in itself a test of liability, but other matters are to be considered in connection with such use in determining the owner's liability for injuries inflicted upon another. Railway Co. v. Morgan, supra."

[2] We are only concerned with the question as to whether under any view of the evidence plaintiff was entitled to recover. If so, the peremptory instruction was error.

[3] We think that under the authorities in this state, some of which we have referred to, the case should have gone to the jury under appropriate instructions as to the is-

sue of an implied invitation to the child to go upon the premises for the purpose of playing with the machine. From such implied invitation, if such there was, there arose duties and liabilities entirely different from those which exist towards a mere trespasser or even a licensee, the nature of which it is not necessary further to discuss.

[4] Appellee insists that there was no knowledge on the part of the employés of appellee that children resorted to the place and played with the machine. The nature of the machine, its peculiar and unusual attractiveness to children, its exposed and entirely unguarded location so near the houses of adjoining dwellers, and the facts shown to have existed as to the open and notorious and frequent use made of the machine by children of the neighborhood, presented an issue either of knowledge of such use by those whose duty it was to look after the property, or of the existence of circumstances from which such knowledge will be imputed to them. If the other facts are sufficient to form the basis of liability, we do not think appellee can absolve itself therefrom by the plea that the machine was left in this exposed condition with no one as to whom knowledge of its use could be shown.

We think the issues should have been submitted to the jury, and for the error in giving the peremptory charge the judgment is reversed and the cause remanded.

Reversed and remanded.