SCOTT STIMPSON, BY NEXT FRIEND v. BARTEX PIPE LINE COMPANY.

No. 5613. Decided March 18, 1931.
(36 S. W., 2d Series, 473.)

*L. B. Godwin* and *J. W. Spivey*, for appellant.

Mr. Commissioner LEDDY delivered the opinion of the court.

The Court of Civil Appeals for the Seventh Supreme Judicial District presents a certified question. The statement and question is as follows:

"Scott Stimpson, as plaintiff, a boy six years old, by his next friend, T. C. Stimpson, instituted this suit in the District Court of Hutchinson County, Texas, against the defendant, the Bartex Pipe Line Company, a corporation, to recover damages for personal injuries sustained by the minor plaintiff on account of the alleged negligence of the defendant.

"The Court sustained a general demurrer to the plaintiff's petition, he declined to amend, and judgment was entered dismissing his case, from which action of the Court he prosecutes this appeal.

"The plaintiff alleges that at the time he was injured and long prior thereto, the defendant was engaged in storing, transporting and shipping crude oil out of Borger, in Hutchinson County, Texas; that in connection with its said business and purpose, the defendant maintained and operated pipe lines, shipping racks and crude oil storage tanks, particularly tank No. 514, at a point about a mile northeast of Borger in what is known as the Phillips Camp. That about June 20, 1928, the date of the injury, and long prior thereto, many residences, occupied by families, were situated within a few feet of the defendant's oil tank No. 514 and the plaintiff, who was but six years of age, lived with his parents, T. C. and Josephine Stimpson, who resided in the immediate vicinity of said tank.

"That storage tank No. 514 was of 55,000 barrel capacity, was constructed of steel and surrounded by an earthern dike about four feet in height and said dike was at all points a distance of about 108 feet from the walls of the steel tank.

"'That said tank is about 30 feet high with the usual vent pipes and stairway. . That a vent line extends from the top of the tank to the said dike on the east side, also on the west side. That the vent lines, made of six inch pipe, extent out of the tank near the top edge and project upward in a goose neck shape for about three feet, extend downward and parallel with and about one foot from the perpendicular sides of the tank, extending in such a manner for about seven feet and then bore off from a line with the sides of the tank at an angle of about 45 degrees for another two feet for a certain brace or support and then the six inch vent lines extend on a line towards and to a point near the top of the dike some 108 feet from the tank.'

"That about four feet from the sides of the tank two three inch pipes about 22 feet in length and three feet apart, with a cross piece at the top, were placed by which each vent pipe was supported. That on the east

side of said tank the vent pipe, with its angles and slopes, together with its support, forms a continuous line and passage way from the top of the tank which is thirty feet high, to the ground. That on the south side of said oil storage tank is a stairway forming one continuous passage from the ground to the top of the tank. That said stairway is of smooth steel, sets at an angle of about 45 degrees, is about 36 feet in length and 2 feet in width and consists of thirty-seven 24x8 inch steps situated about 9 inches apart and has a banister or hand rail on each side about twenty inches above the steps and extending the entire length of the stairway. That about the middle of said stairway was a gate made of one inch perpendicular steel strips with a space about 3½ inches between the strips with a cross piece at the bottom and at the top. That on each side of the gate was a stationary wing, not attached to the gate but attached to the stairway, which wings were each constructed exactly like the gate except they were built of but three uprights of one inch steel strips.

" 'That by reason of the peculiar construction of said tank and apparatus, the attractive and easy access to the top of the tank and by reason of the stairway afore described, the apparent lack of danger in climbing upon the tank, in that the top of the tank was almost flat and by reason of the failure of the defendant to guard said tank or to place any warning signs upon, around or adjacent to said tank or to in any wise advise the public and especially children of immaturity, of danger in connection' therewith, the said tank above described and connections, constituted an attractive nuisance and a constant invitation to the public and particularly to children and persons of tender years and lack of experience, judgment and discretion, to ascend said accessible stairway and to climb upon said dangerous tank. That by reason of all the matters heretofore alleged and by reason of the constant proximity of said stairway, tank and vent lines to children of tender years and so wanting in discretion, and by reason of the facts that the stairway was left upon the ground and exposed and easily accessible to children, said stairway, tank and vent pipes were, on account of their nature and surroundings, especially and unusually calculated to and did allure and attract children of tender years and induce them and particularly your plaintiff, to go upon said premises and to ascend the stairway to the top of the afore described tank.'

"That the great danger incident to said tank, if played upon by children of immature years and lack of discretion, was not understood and appreciated by children and particularly by the plaintiff, who, together with his playmates, were irresistibly attracted thereto.

"That on the 20th day of June, 1928, on account of the alluring and irresistible attractiveness of the oil tank and premises and the childish curiosity and impulse of children and particularly of plaintiff, he and his playmates were attracted by and went to said tank out of curiosity to climb and play upon it. That he and his playmates were of tender years,.

wanting in discretion and judgment and did not realize and appreciate the danger there would be in climbing upon said tank. That while on said premises the plaintiff was allured to said tank as a place to satisfy his childish instinct to climb, explore and play, and he, together with one of his playmates, Russell Darrell, likewise of tender years, who was also irresistibly attracted to said tank, ascended the stairway by climbing around the gate and going upon the top of the tank. After exploring the expanse of the tank on top, the plaintiff was attracted to the vent pipe and the goose neck thereof as above described and sought to descend from the tank by slipping down the vent pipe and pipe rest or support to the ground. That in his efforts to place himself upon the descending vent pipe, he fell a distance of thirty feet, the result of which caused his injuries, which plaintiff sufficiently alleges.

"That on account of the facts and circumstances herein alleged, the defendant owed plaintiff, as an invitee and rightly upon said premises, the duty to exercise ordinary care to maintain its said premises in a reasonably safe condition for the safety and protection of the plaintiff.

"That the defendant failed to exercise ordinary care for the protection of plaintiff, but was guilty of negligence in maintaining its premises as an attractive nuisance. That the defendant was guilty of negligence in failing to warn the public and especially the plaintiff of the dangers incident to playing with and upon said stairway, tank and vent pipes in constructing its stairway so that the lower end thereof rested on the ground and without providing for raising and suspending the lower part of said stairway out of the reach of plaintiff when said stairway was not in use and in failing to construct its gate and the wings attached to the stairway so that plaintiff could not climb around said gate and on to the top of said tank and in failing to surround its premises with a sufficient fence to guard the public and plaintiff from entering upon and using said premises as alleged. That the defendant not only failed to exercise ordinary care, but was guilty of gross negligence in the particulars alleged, which negligence was the proximate cause of plaintiff's injuries.

"The appellant alleges as error the action of the Trial Court in sustaining a general demurrer to his petition, because the allegations thereof show that appellant was a child of immature judgment and without discretion; that appellee had and maintained on its premises an attractive nuisance; that appellant was allured and attracted thereto and became an invitee; that while upon such premises he was injured as the result of the alleged negligence of appellee set out in the petition.

"To support his contention, the appellant cites McCoy v. Texas Power & Light Co. (Texas Com. App.), 239 S. W., 1105; Duron v. Beaumont Iron Works (Texas Com. App), 7 S. W. (2d) 867; Johnson v. Atlas Supply Company (Texas Com. App.), 183 S. W., 31; Hogan v. Houston Belt, etc. Ry. Co. (Texas Com. App.), 148 S. W., 1166; S. A.

& A. P. Ry. Co. v. Skidmore, 27 Texas Civ. App., 329, 65 S. W., 215; S. A. & A. P. Ry. Co. v. Morgan, 92 Texas, 98, 46 S. W., 28; Little v. McCord Co. (Texas Civ. App.), 151 S. W., 835.

"The appellee contends that the demurrer was correctly sustained, because the Court must take judicial knowledge that the citizens of Hutchinson County are extensively engaged in the oil industry, which comprehends the exploration for, production of, and the storing, marketing and transportation of oil; citing Hidalgo County Water Control & Improvement Dist. No. One v. Gannaway (Texas Civ. App.), 13 S. W. (2d) 204; Maryland Casualty Co. v. Marshall (Texas Civ. App.), 14 S. W. (2d) 337; Reynolds et al. v. McMan Oil & Gas Co. (Texas Civ. App.), 11 S. W. (2d) 778; Commercial Acceptance Trust Co. v. Parmer et al. (Texas Civ. App.), 241 S. W., 586; Humphreys Oil Co. v. Lyles et al (Texas Civ. App.), 277 S. W., 100.

"That it is common knowledge that the oil tank described in plaintiff's petition is in common use in the storage of oil and that appellant, having alleged that the stairway and vent pipe was such as are usual in connection with such tanks, appellant's petition failed to show an attractive nuisance; citing, among other cases Williamson v. Gulf C. & S. F. Ry. Co., 40 Texas Civ. App., 18, 88 S. W., 279; Maruska v. M. K. & T. Ry. Co. of Tex. (Texas Civ. App.), 10 S. W. (2d) 211; M. K. & T. Ry. Co. of Tex. v. Edwards, 90 Texas, 65, 36 S. W., 430; Dobbins v. M. K. & T. Ry. Co. of Tex., 91 Texas, 60, 41 S. W., 62; Simonton v. The Citizens Electric Light & Power Co., 28 Texas Civ. App., 374, 67 S. W., 530; Kayser v. Lindell, 75 N. W., 1038; Mobley v. Monroe, 37 Ga. App., 364, 140 S. E., 516.

"That plaintiff's petition shows that there was no latent danger, but that whatever danger existed from the use of the stairway, tank or vent pipe, was patent and obvious, citing 45 C. J., 765, sec. 162, and the authorties noted thereunder, holding that the 'attractive nuisance' doctrine does not apply to agencies in common use where the danger is patent and obvious but only where the danger is latent, hidden and not apparent to those injured, which holding the appellee contends is supported by the Texas cases supra.

"This Court is unable to agree upon the issue presented and we therefore certify to Your Honors the following question:

"Did the Trial Court err in sustaining the appellee's general demurrer to plaintiff's petition and dismissing his case?"

The petition in this case discloses an effort to relieve the injured child from being in the attitude of a trespasser upon appellee's premises by attempting to plead such state of facts as would tend to show that appellee maintained a structure upon its premises of an unusually alluring and attractive nature to children of tender age and that by reason thereof a legal duty was imposed upon it to use reasonable care to so maintain the

same as to prevent such a child from being injured by falling therefrom. In other words, the attempt is made to fasten liability upon appellee under what is known as an attractive nuisance, a doctrine having its origin in the old turntable cases, and which the courts of this state have subsequently held to apply to other conditions, appliances and instrumentalities when the existent facts are such as to call for the application of the principle underlying such doctrine.

A careful inspection of the petition discloses that it is lacking in at least one important essential in order to bring the case within the attractive nuisance doctrine. There is no allegation showing that the structure maintained on appellee's premises, which it is claimed was unusually attractive and inviting to children of tender age, was inherently dangerous, or of such a nature as to lead or attract a child on to it and to another object inherent dangerous. Not only does the petition fail to allege such a state of facts, but it affirmatively appears from the averments therein that the only danger to which children of tender age were subjected by the maintenance of the structure in question was the obvious and patent one of falling therefrom, a danger which is common to every ordinary object of any substantial height above the ground.

An examination of many adjudicated cases decided by the courts of this and other states wherein it has been held that the attractive nuisance doctrine was applicable, reveals the fact that in connection with the maintenance of the condition, appliance or instrumentality claimed to be especially attractive and inviting to children there was involved a concealed, hidden or latent danger and not merely one of an obvious or patent character. M. K. & T. Ry. Co. of Texas v. Edwards, 90 Texas, 65, 36 S. W., 430; McCoy v. Texas Light & Power Co. (Texas Com. App.), 239 S. W., 1105; Duron v. Beaumont Iron Works (Texas Com. App.), 7 S. W. (2d) 867; Maruska v. Railway Co. (Texas Com. App.), 10 S. W. (2d) 111; Williamson v. Railway Co., 40 Texas Civ. App., 18, 88 S. W., 279; Heva v. Seattle School Dist., 110 Wash., 668, 9 A. L. R., 267, 188 Pac., 776; Simonton v. Citizens Electric Light & Power Co., 28 Texas Civ. App., 374, 67 S. W., 530; Brannan v. Wimsatt, 54 App. D. C., 374, 298 Fed., 833; Massingham v. Ill. Cent. Ry., 189 Iowa, 1288, 179 N. W., 832; Stendal v. Boyd, 73 Minn., 53, 73 N. W., 735; Coon v. K. Ry. Co., 163 Ky., 223, 173 S. W., 325, L. R. A., 1915D, 160; Ericson v. Ry. Co., 82 Minn., 60, 84 N. W., 462; Ry. Co. v. Ray, 124 Tenn., 16, 134 S. W., 858.

"It has been considered," says the author of Corpus Juris, vol. 45, sec. 162, p. 765, "that the attractive nuisance doctrine applies only where the danger is latent and not where it is patent, for the reason that the inefficiency of children who are so little advanced as to be able to recognize patent dangers, they should not be allowed to shift the care of them

from their parents to strangers or to impose upon the owner of property a duty and liability where otherwise none would exist."

The same principle is announced in Ruling Case Law, vol. 20, p. 86, sec. 76, wherein the court in discussing this doctrine said:

"If it appears that the injury complained of was produced by a peril of an obvious or patent character a recovery should be denied."

In the case of Hermes v. Hatfield Coal Co., 134 Ky., 300, 120 S. W., 351, 23 L. R. A. (N. S.) 724, a coal dealer maintained near a public street a ladder affording easy access to the top of a chute, was held not liable under the attractive nuisance doctrine, where a child had climbed the ladder and fallen down the chute. In reaching the conclusion that a latent, unguarded or concealed danger was essential to create liability, the court said:

"If the defendant company is responsible in the case at bar, then it would be difficult to limit the rule which would hold a defendant responsible for the trespass of children. There are very few things which would not afford an opportunity for headlong infancy to injure itself. For instance, the ordinary steps which lead from the first to the second story of a building and the banisters which usually guard them are the favorite playground of children, who run up the steps and slide down the banisters. In so doing they may receive a fall at any moment, and, if the defendant is guilty of negligence in the case at bar, it would be difficult to formulate a rule which would exculpate the owners of banisters from which any heedless infant might fall and injure himself. A tree with low projecting limbs is undoubtedly an attraction for infants inclined to climb, and yet we believe that no one would say that one who maintained such a tree in his yard would be liable for damages if a neighbor's child trespassing upon his premises, climbed the tree, fell, and was injured."

In the case of Parker v. New York Tel. Co., 120 Misc. Rep., 459, 198 N. Y. S., 698, 700, it appeared the telephone company had left a rope dangling from the cross arm of a telephone pole. After work hours a small boy climbed the pole to a point where he was able to reach the rope and was swinging on it when his hold slipped and he fell to the ground. The rope upon which he was swinging was not defective and did not break. The court denied a recovery and said if liability could exist where an attractive object was not inherently dangerous, then "every object, although free from defect, upon the public highway, becomes an attractive nuisance upon which liability may be found. The spikes upon the pole in question from which the child might swing would be within the rule. * * * The iron bars of an awning suspended in front of a shop would likewise be within such a rule, as would innumerable other similar objects which in fact attract children to play upon them, and which they do climb upon, swing and drop from, but which are not inherently dan-

gerous, and which do not necessarily lead to other objects inherently dangerous."

We think it a salutary rule which imposes the duty to guard a child of such immaturity as to be able to appreciate patent and unconcealed dangers upon the parent instead of the landowner. Riggle v. Lens, 71 Ore., 125, 142 Pac., 346, 53 L. R. A. (N. S.) 150; Sullivan v. Huidekoper, 27 App. D. C., 154, 5 L. R. A. (N. S.) 263; Railway Company v. Harvey, 77 Ohio St., 235, 19 L. R. A. (N. S.) 1136.

The case made by appellant's petition is not that of a hidden or latent danger in the structure complained of as being especially attractive and inviting to children, such as a defect in the ladder or steps leading to the top of the oil tank, as in Bransom v. Labrot, 81 Ky., 638, 15 Am. Rep., 193, but is one where the child has been subjected to a danger common to that of falling from any ordinary object of a similar height. It would be difficult, if not impossible, for a landowner to guard against the danger of falling incident to boys climbing on almost any kind of objects. Trees, fences, telephone and telegraph poles, houses, barns, garages, buildings in course of construction, and various other objects present to adventurous childhood the very danger which it is claimed the law imposed the duty upon appellee to guard against. Such a danger was not one peculiar to the condition or instrumentality which is claimed to have been so attractive as to entice the injured party thereon, hence there was no foundation for imposing a duty upon the owner of the oil tank to so guard the same as to prevent a child climbing thereon from falling off. The danger of falling from an object is one that cannot in the very nature of things be eliminated, as the guard erected to prevent falling would itself be susceptible to the same danger if a child climbed thereon. Had the child been allured by the attractive nature of the tank and stairway to go onto appellee's premises and there had existed a latent or hidden defect in the stairway which caused it to give way while it was ascending to the top of the tank, an altogether different situation would be presented. Bransom v. Labrot, supra. No such hidden or concealed danger is alleged in the petition, as it is not shown that any part of the oil tank or steps attached thereto was in any way defective or contained any concealed or unsuspecting danger. The facts pleaded merely show a danger which was obvious and patent even to a child of tender years, as such a child in the very nature of things is thoroughly capable of appreciating the fact that if it falls from a structure of the height of the oil tank it would in all probability receive an injury.

Appellant relies upon the McCoy and Duron cases, cited above, the latter decided by this Commission, as sustaining a right to recover in this case. In each of these cases there was connected with the instrumentality causing the injury complained of a hidden and unsuspecting danger of such a nature as that a jury might consistently find was incapable of being

appreciated by a child of tender years. Such a finding could not be sustained under the facts pleaded in this case. For this reason neither of the above cases can be claimed as authority for the proposition that the petition in this case stated a cause of action under the doctrine atempted to be invoked.

Appellant's petition stating no cause of action, we recommend the question certified be answered that the trial court properly sustained a general demurrer thereto.

The opinion of the Commission of Appeals answering the certified questions is adopted, and ordered certified.

C. M. CURETON, Chief Justice.