**J. WEINGARTEN, Inc., v. CARLISLE et al.**

No. 11533.

Court of Civil Appeals of Texas. Galveston.
May 20, 1943.

Rehearing Denied June 10, 1943.

Wood, Gresham, McCorquodale & Martin and M. S. McCorquodale, all of Houston, for appellant.

W. H. Hanson and B. C. Johnson, both of Houston, for appellees.

GRAVES, Justice.

This appeal is from a judgment of the 61st District Court of Harris County awarding appellees, Ella Jo Carlisle, a minor daughter, and her father, W. J. Carlisle, the sums of $5,000 and $1,500, respectively, against appellant, a corporation doing a grocery business in a public store in the City of Houston, as damages found by a jury, in response to special issues submitted, to have been suffered and incurred by each of them as a proximate result of its having negligently left in the aisle of its store a carton containing canned goods, over which Ella Jo fell and was injured.

The appellees had filed separate suits below, severally seeking the damages each claimed as having resulted from the same accident and alleged negligence, but the trial court consolidated and tried both actions as one, and likewise rendered the judgment upon findings of the jury, allocating the separate damages to each appellee, as indicated.

This is the second appeal to this court of the cause as affects Ella Jo Carlisle, the first one having come here from an instructed verdict against her, which determination was affirmed by this court, as reported in 120 S.W.2d 886, in Carlisle v. J. Weingarten, Inc., on a holding that the minor had been a mere licensee upon the appellant's premises, to whom it owed no duty not to have such carton in the aisle of its store.

Upon the prosecution of that former cause to it, however, the Supreme Court, as reported in 137 Tex. 220, 152 S.W.2d 1073, reversed that decision, ruling that, under the facts of the cause, the question of whether or not Ella Jo was an invitee upon the appellant's premises at the time was a question of fact for the determination of the jury.

Both these cited opinions are referred to and made parts hereof, for further description of the cause, as now at bar.

In the consolidated trial from which the present appeal proceeds, a jury found, among other things, that Ella Jo, then a child of eight years of age, had not been a licensee in appellant's store; that its

agents and servants had negligently placed a carton containing canned goods in the aisle, over which Ella Jo had fallen, and in consequence was injured; that her fall had not been the result of an unavoidable accident; that the pasteboard carton so left in the aisle had been obvious to her (that is, could have been readily seen by the eye) as she approached it, and that it was not a hidden danger to her; that she had had no osteomyelitis when she entered the store; that she did not fail to keep a proper lookout for her own safety at and immediately before she sustained the fall; and, finally, that Ella Jo's mother had not been guilty of any negligence with reference to Ella Jo's being in the store, or in what she did, or failed to do, on the occasion in question.

The $1,500 recovery awarded the father, W. J. Carlisle, was the aggregate allowed him as expenses and damages necessitated by, or proximately resulting to him from, the negligent injury to his minor daughter, for: (a) His services to her until she became twenty-one years of age; (b) the cash-value of medical and hospital bills incurred by him until that time; and (c) the cash-value of the loss of her services he would sustain during her ensuing minority.

On appeal, appellant seeks no other relief against Ella Jo Carlisle, except a reversal of the trial court's judgment in her favor, and a rendition of the cause against her, upon two claims: (1) That, under the jury's findings—in response to issues Nos. 9 and 20—the pasteboard carton in question was obvious to her, and was not a hidden danger, as she approached it; (2) there was no evidence that Ella Jo's leg struck the pasteboard carton at the place thereon where the infection started, hence the jury's findings under the other special issues to the contrary were as a matter of law without any support.

The same contentions are likewise relied upon as grounds for its protest against W. J. Carlisle's part of the adverse judgment, with the added count that the court committed prejudicial error against it in his favor in allowing the jury, under submitted special issue No. 22, to award any of the elements of damage in his behalf therein permitted, because: (1) The evidence was either wholly lacking, or insufficient as a predicate for the allowances the jury made thereon; and (2) the court reversibly erred in refusing to permit appellant to interrogate the witness, Dr. Tuttle, with respect to the medical textbook known as that of Reed & Emmerson, as a means of testing his knowledge of the subject he was testifying about.

Appellant asserts—and no denial by appellees thereof appears—that it requested submission on this trial of all three special issues Nos. 9, 20, and 11, as referred to supra, the answers to the first two determining that the pasteboard carton in the aisle Ella Jo Carlisle was found to have fallen over was obvious and not a hidden danger to her as she approached it at the time, and the third one that she did not fail to keep a proper lookout (as defined by the court) at the time she so sustained her fall; but, in this court, it yet insists that, notwithstanding the child's tender age of eight years at the time, the findings that the carton was obvious to her (that is, "could be readily seen by the eye"), and was not a hidden danger, convicted her of contributory negligence as a matter of law, thereby rendering the further specific finding that she had not been guilty of any contributory negligence, immaterial and worthless.

It cites many authorities as being relied upon in that respect, under its argument that Ella Jo must have been presumed to have seen the carton, hence was perforce precluded as a matter of law from any recovery whatever, the principal ones being these: Shawver v. American Ry. Express, Tex.Civ.App., 236 S.W. 800 (error refused); Hausman Packing Co. v. Badwey, Tex.Civ.App., 147 S.W.2d 856 (error refused); Marshall v. San Jacinto Building, Tex.Civ.App., 67 S.W.2d 372 (error refused); 45 Corpus Juris, 837; Stimpson v. Bartex Pipe Line Co., 120 Tex. 232, 36 S.W.2d 473; Weingarten v. Brockman, Tex.Com.App., 135 S.W.2d 698; Russell v. Liggett Drug Co., Tex.Civ.App., 153 S.W.2d 231 (error refused); Beeville Cotton Oil Co. v. Sells, Tex.Civ.App., 84 S.W.2d 575, 576; Patton v. Dallas Gas Co., 108 Tex. 321, 192 S.W. 1060; Boltinghouse v. Thompson, Tex.Civ.App., 12 S.W. 2d 253; Koock v. Goodnight, Tex.Civ.App., 71 S.W.2d 927 (error refused); Summa v. Morgan Real Estate Co., Mo.Sup., 165 S.W.2d 390; Peerless Mfg. Corp. v. Davenport, 136 S.W.2d 779; Fager v. Peverly Dairy Co., 235 Mo.App. 1036, 148 S.W.2d 61; Murray v. Ralph D'Oench Co., 347 Mo. 365, 147 S.W.2d 623; Rohmann v. City of Richmond, Mo.App., 135 S.W.2d

378; 20 R.C.L., pp. 56, 57; 38 Am.Jur., 757.

This court has carefully examined the main ones of these holdings, but cannot agree with the appellant that they conclude the distinctive question here involved in its favor; on the contrary, they all, with the single exception of Stimpson v. Bartex Pipe Line Co., 120 Tex. 232, 36 S.W. 2d 473, 475, declared their pronouncements to be the rule with reference to adults, and not to children of eight years of age, as was the young appellee in this instance.

On that precise feature it quotes the Supreme Court's declaration with reference to the Stimpson child, which was only six years old, to-wit: "If it appears that the injury complained of was produced by a peril of an obvious or patent character a recovery should be denied", as being decisive of the present controversy.

In this court's opinion, that cause, not having stemmed from comparable facts, is not analogous to nor controlling of this one; indeed, from its very inception it proceeded from a different groundwork, in that the oil-tank upon which that child climbed constituted private premises, hence it was a naked trespasser thereon, unless relieved of that status by the doctrine of "an attractive nuisance", upon which alone its suit was based; whereas, in this instance "the premises" undisputedly constituted a public grocery store, to which mothers— with just such tender-aged children as this one was attending them—were habitually welcomed as invitees.

Moreover, the Supreme Court's holding adverse to the Stimpson child was based entirely upon its determination that an indispensable requisite of "an attractive nuisance" was shown to have been missing in that case, to-wit: The complete absence of any inherent danger in the situation in which the child had placed itself; 36 S.W. 2d at pages 475–477, inclusive.

Here, in contrast, this jury, upon evidence that is not even challenged, found this little girl to be an invitee upon appellant's premises in complete compliance with the law as so declared by the Supreme Court in this case on her former appeal. 152 S.W.2d at pages 1075, 1076. She was, accordingly, clothed with all the legal rights inuring to her as such; not only so, but appellant itself, in so requesting the submission of special issue No. 11, induced the court, in inquiring whether Ella Jo had failed to keep "a proper lookout" for her own safety at and immediately prior to the time she sustained her fall, to specifically define just what was required of her in this appended definition: "By the term 'proper lookout', as that term is used in the above special issue, is meant such a lookout as a person of similar age, intelligence, and experience, in the exercise of ordinary care, would have kept under the same or similar circumstances."

Obviously, it is thought, under this inquiry and this definition, the law makes a reasonable distinction between the degree or quantum of care required of adults, upon the one hand, and of children of eight years of age upon the other, based upon their comparable age, judgment, and experience—exacting of a child less than it does of an adult. In other words, it may be that, had Ella Jo been an adult and had neither looked at nor seen this carton in the aisle—as she testified she had not done—she might, in the absence of any diverting or other exculpatory circumstances, have been precluded from recovery for not having seen it; but the jury presumably concluded, and permissibly so, it would seem, that an ordinary child of her age, situated as she was, would probably not have looked that way, nor in fact have seen the impediment, as she twice reiterated upon this trial she had not done; she being at the time of testifying a girl of sixteen, and undertaking then to recall what she had done eight years before, at the time this accident happened to her.

In that effort she testified, in small part, as follows:

"Q. Did you see this box before you fell over it? A. No, sir.

"Q. What were you doing, where were you looking? A. Looking up on the shelves, selecting merchandise."

This court in Sorrentino v. McNeill, 122 S.W.2d 723, in which cause the Supreme Court refused a writ of error, held, even as to a six-year-old child, that the question of whether or not it had been contributorily negligent was not predetermined against it by a presumption of law arising from its age alone, but was one for the jury after considering all the evidence. So in the present case, under such issue No. 11, and without any challenge of the sufficiency of the evidence to sustain it, the jury found this child not

174

to have been guilty of any contributory negligence in not having seen this carton before falling over it, despite the fact that it was not a hidden danger to her.

The trial court, therefore, correctly disregarded the jury's answers to issues 9 and 20, as being immaterial, or evidential at most, and rendered judgment on the verdict otherwise in the appellees' favor. Brokaw et al. v. Collett et al., Tex.Com. App., 1 S.W.2d 1090.

Indeed, standing alone, these two inquiries would seem to have presented no issue at all for submission, since the undisputed evidence was to the effect that the carton's presence in the aisle was obvious and was not a hidden danger. Speer's "Law of Special Issues in Texas", paragraph 163, and cited cases.

■ Appellant's second complaint against the child's recovery is overruled, on the ground that the proof was ample to show injury to the lower one-third of the appellee's left leg, some 2 or 3 inches above the ankle joint, and that such injury spread up and down the leg and into the ankle joint, substantially in accord with her pleading of injury, which, in material part, was this: "Ella Jo struck her foot and/or leg against and fell upon and over a box, or container, containing canned goods, and the cans therein, left unguarded in such aisle or walkway by defendants; that as a result of such fall she suffered severe and permanent injuries rendering her a cripple for life, as will be hereinafter more fully alleged."

■ These conclusions likewise determine adversely to it all of appellant's assignments against W. J. Carlisle's recovery, except its complaint against special issue No. 22, enumerating the permissible elements of that appellee's claimed damages for the jury to consider; as to that, it seems clear, contrary to appellant's presentment, that ample evidence existed from which the jury could properly determine the future medical and hospital bills that would accrue from this injury, as this brief summary manifests: It had occurred back on July 22 of 1935, and for about five years thereafter the child had been treated by physicians at various times for a recurrence or flaring-up of the trouble resulting from the fall; she had, in the long interval between that date and this trial in November of 1942, been operated upon some 18 or 19 times, confined to hospitals some half a dozen times, had X-ray pictures disclosing many of the attending conditions and consequences having been exhibited to the jury; and there was also overwhelming medical testimony, as well as that of Ella Jo herself on that feature, reasonably indicating that the trouble would still continue over a period of many years to come.

■ Without further discussion, this contention is overruled as being devoid of merit, as is likewise the final complaint that appellant suffered any prejudicial effect from the court's ruling in refusing to admit the Reed & Emmerson medical textbook, offered by it for the avowed purpose of testing his knowledge and of determining whether or not he agreed with its discussion of acute osteomyelitis; it sufficiently appearing that such text was not germane to and did not serve to impeach Dr. Tuttle's extended testimony upon the medical issues involved in this trial.

These conclusions require an affirmance of the judgment; it will be so ordered.

Affirmed.