H. L. LEDBETTER, Individually and as Next Friend of Sandra Ledbetter, a Minor, Appellants,

v.

ASHLAND OIL & REFINING COMPANY, Appellee.

No. 5551.

Court of Civil Appeals of Texas.

El Paso.

Dec. 12, 1962.

Rehearing Denied Jan. 9, 1963.

Perkins, Bezoni, Kirwan & McWhorter, Midland, for appellants.

Jack Little and James Little, Big Spring, for appellee.

CLAYTON, Justice.

From a "take nothing" judgment against the plaintiffs, the latter appeal. Parties will be designated as they appeared below.

Suit was brought in the District Court of Midland County, Texas by H. L. Ledbetter, individually and as next friend for his daughter, Sandra Ledbetter, against the Ashland Oil and Refining Company, a corporation, for injuries suffered by Sandra resulting in the loss of her left leg. The defendant was the operator of certain oil and gas wells and properties located in Midland County, Texas known as the B. T. Hale Lease. One of the producing oil wells was located on a farm or ranch belonging to B. T. Hale the surface rights of which were subsequently leased to Alton L. Ledbetter, who with his wife and two children lived in a residence located on said land. Alton L. Ledbetter was the brother of plaintiff H. L. Ledbetter and the uncle of the minor plaintiff Sandra Ledbetter. On February 14, 1960 H. L. Ledbetter and his wife and two children, Sandra and her brother, were visiting at the Alton Ledbetter home. About forty yards from the residence was a barn, and the pumping unit for the oil well was located about 120 yards from the barn. At the time of this visit Sandra was a little over eleven and a half years old. She and some of the other children had been riding horses on the ranch and that afternoon or early evening they had gone out to the barn, ostensibly to saddle and ride the horses again, but instead went over to the oil well pump on the suggestion by one of them that they ride that "horse". The pump was operating and one of the other children climbed up to the horizontal or "walking" beam and was riding it like a "see-saw" or "rocking horse". Sandra stepped on the bolt heads which attach the crank to the Pitman arm and was riding this moving equipment by holding onto the Pitman arm, when in some manner her left leg was caught in and crushed by the moving parts.

In so far as pertinent to this appeal, the case was submitted to the jury on eight special issues. In answer to Special Issue No. 1, the jury found that the defendant should have reasonably anticipated that small children would likely frequent the place where the oil well pump was situated and play about it.

In answer to Special Issue No. 2, the jury found that the defendant, through its agents, servants and employees, knew or should have known that the pump, in the condition in which Sandra Ledbetter found it on February 14, 1960, involved an unreasonable risk of injury to children.

By Special Issue No. 5 the jury determined that the failure of the defendant to erect a fence or other protective structure around the oil well pump prior to the accident was negligence on the part of the defendant, and under Special Issue No. 6 that such negligence was a proximate cause of the injuries sustained by Sandra Ledbetter

Special Issue No. 4 resulted in a finding that the utility to the defendant in maintaining the pump unfenced was slight as compared to the probability of injury to children.

Special Issue No. 3, as originally framed, required the jury to find whether Sandra, at the time and place of her injury, taking into consideration her age, capacity and experience, did, or did not "realize the danger involved" in her playing on the oilfield pump. Upon request from the jury for a definition of "danger involved" the court submitted an amended charge which substituted for the wording "realize the danger involved", the wording "realize that there was danger of personal injury involved" in her playing on the oilfield pump. The jury thereafter made further inquiry as follows: "Does 'personal injury' as used in the attachment mean any sort of personal injury

such as bruise, sprain or abraision or does it mean the loss of a leg—as was sustained by Sandra?" The jury was thereupon further instructed: "It means any personal injury to be sustained on account of the machinery"; after which the jury answered the issue that Sandra did realize that there was danger of personal injury involved.

The jury finding on Special Issue No. 9 was that Sandra Ledbetter was negligent in standing on the protruding bolt-heads of the Pitman arm of the pump while the Pitman arm was in motion, but in answer to Special Issue No. 10 replied that such negligence was not a proximate cause of the injuries and damages which she and her father sustained.

On other special issues the jury found that the occurrence was not the result of an unavoidable accident, and awarded damages.

As previously indicated, on motions by both the plaintiffs and the defendant for judgment on the verdict the trial court rendered judgment for the defendant.

Plaintiffs (appellants), in their sole point of error, here contend that the trial court erred in overruling plaintiffs' motion for judgment and entering judgment for defendant (appellee) because under the facts and jury findings in the case the defendant was under legal duty to use ordinary care with respect to the minor plaintiff, but was found by the jury to have been guilty of negligence which proximately caused her injuries and there was an absence of any findings of legal effect with respect to any defensive issues.

We cannot agree with that portion of plaintiffs' argument that asserts that Sandra was rightfully upon the premises where she was injured and that, arising from her rightful presence there, the defendant owed a duty for her care and protection.

■ Assuming, without holding, that Sandra was an invitee of her uncle on the premises over which he had leased the surface estate, this invitation of her uncle did not include the right of Sandra to go upon the machinery and equipment being rightfully operated by the defendant, as owner of the dominant estate, on that portion of the premises on which it was conducting oil pumping operations. Warren Petroleum Corp. v. Martin, 153 Tex. 465, 271 S.W.2d 410 (1954).

If Sandra was not a trespasser on this machinery and equipment, it must be through an *implied invitation* to her from the defendant to go upon such machinery and equipment, and from this implied invitation the duty of reasonable care toward her safety on the part of the defendant arose.

While there is a wealth of authority dealing with this subject, we feel that the wording of the Texas Supreme Court holding in the 1953 case of Eaton v. R. B. George Investments, 152 Tex. 523, 260 S.W. 2d 587, clearly sets out the law of this State applicable to the facts in the instant case. The cited case arose from the drowning of a child in a cattle dipping vat of the defendant. The Supreme Court reversed the decision of the trial court (affirmed by the Court of Civil Appeals) which granted the defendant's motion for judgment on the verdict. The court based its decision on the prior Supreme Court ruling in Banker v. McLaughlin, 146 Tex. 434, 208 S.W.2d 843, 8 A.L.R.2d 1231. It is necessary to quote portions of the opinion in the Eaton case:

> "The judgment of the trial court granting defendant's motion therefor was rendered on the theory that since the structure was not unusually attractive to children the child had no implied invitation to enter the premises and was no more than a trespasser or bare licensee to whom the defendant owed no duty other than not to wilfully or intentionally injure her.
>
> \* \* \* \* \* \*
>
> "Whatever may have been the rule in this state prior to the Banker decision, it is now clear that a landowner cannot escape liability for bodily harm

to trespassing children caused by a structure or other artificial condition maintained on his land by simply establishing that such structure or other artificial condition was not unusually attractive to children. In the Banker case this court approved and adopted the rule laid down in Volume 2, p. 920, Sec. 339 of the Restatement of the Law of Torts wherein it is said:

" 'A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

" '(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

" '(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

" '(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

" '(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein.'

"See also Prosser on Torts, Sec. 77, pp. 620–625."

In the instant case condition (a) above was fulfilled by a jury finding of "foreseeability" on the part of the defendant under Special Issue No. 1, of negligence under Special Issue No. 5 and of proximate cause under Special Issue No. 6. These findings plus the "unreasonable risk" finding under Special Issue No. 2 fulfill the requirements of condition (b) above. In fulfillment of the condition of subparagraph (d) above, the jury found that the utility to the defendant of maintaining the oil well pump in question unfenced was slight as compared to the probability of injury to children.

It is the provision of subparagraph (c) above, however, that we feel should be determinative of the case at hand. Did Sandra Ledbetter, because of her youth, not discover that the oil well pump was in operation or realize the risk involved in climbing upon its moving parts while it was so operating? Sandra was a normal child, making average grades in the sixth grade of elementary school, who would have been twelve years of age on the 28th day of June, 1960 following her accident on February 14, 1960. She had visited the Alton Ledbetter place on occasions previous to her accident, knew of the pump, and had played on it on at least one prior occasion when the pump was not operating. She stated in her deposition that she knew better than to put her leg between the moving parts while the pump was operating, and that if her foot got caught between the parts there was a possibility of getting hurt, in direct contradiction to her later testimony from the witness stand that she did not know that if her foot got caught there would be a possibility of being hurt. However, in her testimony she again said she would not have put her leg in there on purpose. It was open and obvious to Sandra, at her age, with her mental capacity, that the pump was in fact in operation—she "rode" upon its moving parts; and while of course it is not likely that she could have anticipated the very nature of the injury that might result from her behavior, she was of the age and mental capacity to have known, and did know, that in its operating condition the pump presented a very definite hazard to anyone who voluntarily climbed upon its moving parts. The jury found, in answer to Special Issue No. 3, that Sandra "did realize that there was danger of personal injury involved" in her playing on the pump, and such a finding is amply justified by the evidence. Thus we are drawn to the conclusion that Sandra Ledbetter

does not come within the category of children described in subparagraph (c) above, who "because of their youth do not discover the condition or realize the risk involved" in going upon or about dangerous structures or other artificial conditions maintained upon land by its possessor. It follows that the rule of liability of the defendant approved and adopted in the Banker case, supra, and followed in the Eaton case, supra, does not apply in the instant case.

It should be borne in mind that in applying the rule of liability in the Banker case the court was dealing with circumstances involving the death of a five years, ten months old child, and in the Eaton case, the death of a three years and eight months old child. So also, in the recent Supreme Court case of Harvey v. Seale, 362 S.W.2d 310, reported in Volume 6, page 15, October 6, 1962 issue of the Texas Supreme Court Journal, cited by appellants in a supplemental brief, liability was applied under entirely different circumstances involving injury to a 9½-year-old, second-grade school child. We feel that these facts, among others, serve to distinguish these cases from the one at hand.

■ Plaintiffs-appellants further urge that even the "infant trespasser" or "attractive nuisance" doctrine requires the jury to find no more to entitle plaintiffs to judgment than it found for plaintiffs in this case. If the decisions in the Banker and Eaton cases allow a recovery which is cumulative of (or alternative to) a recovery under the "attractive nuisance" doctrine, we do not believe the latter is applicable under the facts in the case under consideration. In the first place, we do not feel that Sandra Ledbetter was a child of such tender years and immaturity as to have been so unusually attracted by the operating pump that she was oblivious to its dangers. Secondly, these dangers were not concealed, hidden or latent, but were, we feel, obvious and patent to Sandra.

In Stimpson v. Bartex Pipe Line Co., 120 Tex. 232, 36 S.W.2d 473 (1931), the court points out:

"An examination of many adjudicated cases decided by the courts of this and other states wherein it has been held that the attractive nuisance doctrine was applicable reveals the fact that, in connection with the maintenance of the condition, appliance, or instrumentality claimed to be especially attractive and inviting to children, there was involved a concealed, hidden, or latent danger, and not merely one of an obvious or patent character. (Citing numerous cases).

" 'It has been considered,' says the author of Corpus Juris, vol. 45, § 162, p. 765, 'that the attractive nuisance doctrine applies only where the danger is latent and not when it is patent, for the reason that the inefficiency of children who are so little advanced as to be unable to recognize patent dangers should not be allowed to shift the care of them from their parents to strangers or to impose upon the owners of property a duty and liability where otherwise none would exist.'

"The same principle is announced in Ruling Case Law, vol. 20, p. 86, § 76, wherein the court, in discussing this doctrine, said: 'If it appears that the injury complained of was produced by a peril of an obvious or patent character a recovery should be denied.' "

■ Under any aspect of this case, in our opinion, Sandra Ledbetter was no more than a trespasser upon the pumping equipment of the defendant, and if this be correct, the defendant owed to her no more duty of protection than not to intentionally, willfully or wantonly injure her. Warren Petroleum Corp. v. Martin, 153 Tex. 465, 271 S.W.2d 410, supra. There is no intimation anywhere in the record that defendant acted in such manner. The facts

and circumstances of this case also eliminate any duty on the part of the defendant to instruct Sandra Ledbetter, or warn her, of the dangers involved in climbing upon the defendant's operating pump, since she had the knowledge which instruction would have given her, and knew how to avoid this particular danger—by refraining from putting herself in a position where the pump might hurt her. 38 Am.Jur. 751, § 91; Stamford Oil Mill Co. v. Barnes, 103 Tex. 409, 128 S.W. 375, 31 L.R.A.,N.S., 1218; Franklin v. City of Galveston, Tex.Civ. App., 256 S.W.2d 997 (1953).

■ If there is no duty on the part of the defendant toward plaintiff Sandra Ledbetter (except, as stated above, not to intentionally, willfully or wantonly injure her, which defendant did not do) it seems to be immaterial to the disposition of this case whether Sandra was contributorily negligent or not. However, should it be said that our reasoning in this respect is not necessarily determinative of this matter, it might be well to comment on the sub-point strongly urged by the plaintiffs that the finding by the jury of negligence on the part of Sandra (Special Issue No. 9) did not bar recovery, since the jury further found that this negligence was not a proximate cause of the injury and damages sustained (Special Issue No. 10). We have reviewed those cases, such as Little Rock Furniture Mfg. Co. v. Dunn, Tex.Civ.App., 222 S.W.2d 985, wherein it is held that proximate causation is an essential part of a defense of contributory negligence. The careful trial court here submitted the issues of "ordinary care" as applied to Sandra Ledbetter, and "proximate cause", under definitions that are in compliance with those set ou in the Supreme Court holding in Rudes v. Gottschalk, 159 Tex. 552, 324 S.W.2d 201. However, further following the language of the Rudes opinion, it might well be said that under the facts and circumstances of the case before us, reasonable minds could not differ but that Sandra Ledbetter, under what has been shown of her age, intelligence, knowledge and capacity, should be

held to the adult standard of the ordinarily prudent person, and that her conduct established contributory negligence as a matter of law.

We have been favored with excellent briefs in behalf of both sides of this case, and our decision herein is not an easy one. However, we feel, from what has been said in all of the foregoing, that plaintiffs' (appellants') point of error, and all sub-points thereunder, must be overruled and the judgment of the trial court affirmed.