Opinion by
 

 Baldrige, J.,
 

 This appeal by the defendant is from a judgment obtained by the plaintiffs in an action of trespass brought to recover damages for the death of their 16 year old son, Edward Markovich. The boy was electrocuted about 4 o’clock Sunday afternoon, November 28, 1937, by coming in contact with a high voltage, uninsulated wire which had been carried down by a dead beech tree falling across the path along which he and an older sister, Mrs. Zebrasky, were walking. The wires in possession of, and controlled by, the defendant were
 
 *110
 
 strung on poles 8 to 12 feet high located in the middle of an abandoned tramway. The path taken by the decedent and his sister ran from a public road near a coal mine entrance, thence along the tramway beneath the power line to other paths leading to another mine entrance and the mining camp or village where the plaintiffs had their home. When they came to the place where the tree had fallen across the path, the boy, who was walking behind his sister, said: “Let me go first.” He then stepped over the trunk of the tree onto a wire lying beneath it and was immediately electrocuted.
 

 The court submitted to the jury for determination questions involving: (1) a permissive use of the pathway; (2) defendant’s negligence in failing to insulate the electric wires; (3) constructive notice to the defendant that the wires were down; and (4) the boy’s contributory negligence.
 

 ONE. The defendant had a possessory interest in the land in question by lease from the owner for mining purposes. There is ample evidence in the testimony showing a permissive use of this path and abandoned tramway for 14 or 15 years by miners, women and children, members of the mining settlement, and others, which use was known to, and acquiesced in, by the defendant company. No public road enters the mining settlement, and the only access thereto is by a private road or path which leads across this hilly country1 covered with scrub timber.
 

 The shortest route for the deceased boy and his sister to reach their destination was by the path they used. The defendant offered evidence of the existence of a barbed wire fence, but it was shown that it did not obstruct the path in question, but one nearby leading to it, and furthermore it had an opening therein for persons to pass through. The evidence justified a finding that the defendant had permitted the public generally to use this path for a long period of time. The boy in such circumstances was not a trespasser
 
 *111
 
 but a gratuitous licensee. See Restatement, Torts, §331. Under comment (a) it is stated: “A permission is conduct justifying others in believing that the possessor is willing that they shall enter if they desire to do so.” Mr. Justice Drew in
 
 Hogan et al. v. Etna Concrete Block Co.,
 
 325 Pa. 49, 188 A. 763, stated p. 51: “Toleration of trespass for sufficient time gives rise to privilege which adds to the duties of the occupier in the maintenance and use of his premises.”
 

 TWO. That brings us to the consideration of the extent of the legal duty imposed upon the defendant in the maintenance of this power line, which connected various points on the company property. It consisted of three uninsulated wires and a trolley wire strung on locust poles. The photographic Exhibit “G” offered in evidence shows the highest wire, which ran directly over the top of each pole, was attached thereto by a small glass insulator. The other two were fastened to short cross arms on either side of the pole. The trolley wire, still lower, was attached below the cross arm directly to the side of the poles. A somewhat similar situation appears in
 
 Jones v. Pa. Coal & Coke Co.,
 
 255 Pa. 339, 343, 99 A. 1008. The fallen tree, 24 feet high, was situate above the path to the boy’s left as he and Ms sister approached. It had broken off 3 or 4 feet from the bottom and fallen diagonally across the path, pulling down the wires on the poles and coming to rest, supported by its branches, on a pile of pit posts. Under the facts outlined what degree of care was imposed upon defendant?
 

 The salutary and well settled rule in this Commonwealth is that one using a dangerous agency or instrumentality is bound to exercise care commensurate with the danger. One maintaining a high voltage electric wire line is required to exercise the highest degree of care practicable. In
 
 Fitzgerald v. Edison Electric Co.,
 
 200 Pa. 540, 50 A. 161, Mr. Chief Justice Mitchell stated, p. 543: “Wires charged with an electric current
 
 *112
 
 may be harmless, or they may be in the highest degree dangerous. The difference in this respect is not apparent to ordinary observation, and the public, therefore, while presumed to know that danger may be present, are not bound to know its degree in any particular case. The company, however, which uses such a dangerous agent is bound not only to know the extent of the danger, but to use the very highest degree of care practicable to avoid injury to everyone who may be lawfully in proximity to its wires and liable to come accidentally or otherwise in contact with them.” The later cases have consistently observed this rule. See
 
 Daltry v. Media Electric Light, Heat & Power Co.,
 
 208 Pa. 403, 57 A. 833;
 
 MacDougall v. Penna. Power & Light Co.,
 
 311 Pa. 387, 166 A. 589;
 
 Ashby v. Phila. Electric Co.,
 
 328 Pa. 474, 478, 195 A. 887;
 
 Sebok v. Penna. Edison Co,
 
 331 Pa. 524, 1 A. 2d 680;
 
 Shapiro v. Philadelphia Electric Company,
 
 342 Pa. 416, 21 A. 2d 26. See, also, Restatement, Torts, §324 to 337; Tort Liability to Trespassers, Eldredge, 12 Temple Law Quarterly, 32. We think it was for the jury to determine whether the defendant failed to exercise the degree of care which the law imposed upon it.
 

 THREE. We come now to the question of notice. One of plaintiff’s witnesses, a skunk trapper, testified that about 6 o’clock that morning, when it was daylight, he was on a hill about 100 feet above the place of the fatal accident and as he looked down he saw the tree and electric wires across the path. The credibility of this witness, which was for the jury to consider, was challenged by defendant. It called a weather expert who stated that the sun did not rise that morning until 7:23 a.m. Various witnesses testified to a violent windstorm accompanied by a sudden drop in temperature of almost 40 degrees, occurring an hour or so before this unfortunate accident, which tended to show that the tree and electric wires were down only two hours before deceased met his death. The length of time neces
 
 *113
 
 sary to constitute constructive notice of a dangerous condition depends upon the circumstances of each case, including the place the dangerous condition exists, population of the neighborhood, the possibility of injury to persons in the vicinity, etc.:
 
 Grossheim v. Pittsburgh & Allegheny Telephone Co.,
 
 255 Pa. 382, 387, 100 A. 126;
 
 Schrull et al. v. Phila. Suburban Gas & Electric Co.,
 
 279 Pa. 473, 476, 124 A. 141.
 

 Aside from the question of defendant having constructive notice of the dangerous condition that existed, we think there was evidence from which the jury could find, having regard to the use of the pathway by various classes of persons, including deceased, that defendant did not exercise the requisite high degree of care in erecting and maintaining uninsulated wires on short poles in such close proximity to a permissive path that a falling tree dislodged them and caused injury to a person lawfully using it. The lack of proper insulation of wires carrying high voltage electricity was one of original construction and maintenance. Prudence required that protection be afforded to those using the path from a potential danger. Proof of notice to the defendant of the dangerous condition was therefore unnecessary:
 
 Yeager v. Edison Electric Company,
 
 246 Pa. 434, 438, 92 A. 500. Plaintiffs produced an electrical engineer who stated that in his opinion defendant’s poAver lines along this path should have been insulated. Further, although it was Sunday and the mine was closed, the poAver had not been shut off and concededly no one was then on duty or in charge of the power house.
 

 Assuming the storm and falling tree Avere acts of Providence for Avhich defendant was not responsible alone, it Avould nevertheless be liable where its negligence concurred vdth natural phenomena to bring about the injury or death:
 
 Campbell v. Western Union Telegraph
 
 
 *114
 

 Co.,
 
 139 Pa. Superior Ct. 553, 558, 559, 12 A. 2d 816, affirmed per curiam in 341 Pa. 103, 17 A. 2d 346.
 

 POUR. The question of deceased’s contributory negligence was for the jury. Mrs. Zebrasky testified the wires were not apparent as they approached the fallen tree. Her testimony on this point is as follows:
 

 “Q. Could you see the wires?
 

 “A. No; there was leaves on the tree, it was dead, but a little bit of leaves, and it was moving, you couldn’t tell the leaves from this wire.
 

 “Q. And did you notice the wires were down?
 

 “A. No, sir.”
 

 In view of this testimony that the wires were hidden by the tree and not visible, it was for the jury to decide whether deceased was contributorily negligent in stepping over the fallen tree rather than walking between the tree and the stump. Under the testimony offered by plaintiffs, the deceased clearly could not be declared guilty of contributory negligence as a matter of law.
 

 A careful consideration of this record fails to disclose any reversible error.
 

 The judgment of the learned court below is affirmed.