**ENTERGY GULF STATES, INC., Appellant,**

v.

**Ken ISOM, and Suzanne Isom, Individually and as Representatives of the Estate of their Deceased Son, Shane Isom, Appellees.**

**No. 09–03–572 CV.**

Court of Appeals of Texas, Beaumont.

Aug. 12, 2004.

Paul A. Scheurich, Christine S. Kibbe, Entergy Services, Inc., Louis Leonard Galvis, Entergy Services, Inc., New Orleans, La, Jacqueline M. Stroh, Crofts & Callaway, San Antonio, for appellant.

Walter Umphrey, Zona Jones, Christopher T. Coco, John A. Cowan, Provost & Umphrey Law Firm, LLP, Beaumont, for appellees.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

Ken and Suzanne Isom sued Entergy Gulf States, Inc. ("Entergy") after Shane Isom, their thirteen-year-old son, was fatally injured in an accident occurring on Entergy's right of way. Entergy filed three motions for summary judgment and the trial court denied them. Subsequently, the trial court certified its order for immediate interlocutory appeal pursuant to Section 51.014(d-f) of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(d-f) (Vernon Supp.2004). This Court granted Entergy's request for permission to pursue its interlocutory appeal in which Entergy brings three issues. Issue one contends the attractive nuisance doctrine does not apply in this case. Issue two asserts Entergy did not act with gross negligence and issue three maintains the Isoms cannot recover punitive damages because their claim for compensatory damages fails. We will reverse and render.

### Background

This case involves a tragic accident that resulted in a family's loss of a beloved son. When the accident occurred, Shane Isom was almost fourteen; his birthday was two weeks away. He and two friends, Mitchell Duchamp and Aaron Little, were riding the Isoms' new all terrain vehicle ("ATV") on Entergy's right of way. At the time of the accident, Mitchell was driving the ATV, Shane was sitting in the middle, and Aaron was sitting at the back. Mitchell tried to avoid ruts in the center of the right of way. In doing so, he took a route under an anchored guy wire. Looped around the anchored guy wire was a broken guy wire. The looped wire had been broken for approximately a year before the accident and for a while was hanging freely. For six to seven months before the accident, however, the broken wire had been looped around the anchored guy wire. The tracks of the ATV indicated it passed under the looped guy wire. Shane Isom was knocked off the ATV. He was found lying a few feet from the wire with neck injuries from which he subsequently died.

### Standard of Review

Entergy sought a traditional summary judgment on the Isoms' attractive nuisance cause of action. *See* Tex.R. Civ. P. 166a. On the gross negligence cause, Entergy filed motions for both a traditional summary judgment and a no-evidence summary judgment. *See id.; see* Tex.R. Civ. P. 166a(i).

We review summary judgments de novo. *Chavez v. City of San Antonio ex rel. City Pub. Serv. Bd. of San Antonio,* 21 S.W.3d 435, 438 (Tex.App.-San Antonio 2000, pet. denied). Entergy, as the movant, has the burden of showing no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). When reviewing a traditional summary judgment, we take as true all evidence favorable to the nonmovant. *See Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223, (Tex.1999); *see* Tex.R. Civ. P. 166a. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* A defendant who disproves an essential element of the plaintiff's cause of action as a matter of law is entitled to summary judgment. *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 476–77 (Tex. 1995). "After the defendant produces evidence entitling it to summary judgment, the burden shifts to the plaintiff to present evidence creating a fact issue." *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996).

Under the no-evidence summary judgment rule, the movant may move for summary judgment if there is no evidence of one or more essential elements of a claim or defense on which the nonmovant would have the burden of proof at trial. *Allen v. W.A. Virnau & Sons, Inc.*, 28 S.W.3d 226, 231 (Tex.App.-Beaumont 2000, pet. denied); *see* Tex.R. Civ. P. 166a(i). The motion must state the elements for which there is no evidence, and the reviewing court must grant the motion unless the nonmovant produces summary judgment evidence raising a genuine issue of material fact. *See id.*

As a no-evidence motion for summary judgment is essentially a pretrial motion for instructed verdict, the appellate court applies the same standard of review. *Allen*, 28 S.W.3d at 231. We first consider all the evidence in the light most favorable to the non-movant and disregard all contrary evidence and inferences. *Id.* The non-movant defeats the no-evidence motions by producing more than a scintilla of probative evidence raising a genuine issue of material fact on each element of a claim or defense challenged by the movant. *Id.* More than a scintilla exists when the evidence is such that reasonable and fair-minded persons may differ in their conclusions. *Id.*

### Attractive Nuisance

As to trespassers, a premises owner or occupier owes only the duty not to injure the trespasser willfully, wantonly, or through gross negligence. *Texas Utilities Elec. Co. v. Timmons*, 947 S.W.2d 191, 193 (Tex.1997) (citing *Burton Constr. & Shipbuilding Co. v. Broussard*, 154 Tex. 50, 273 S.W.2d 598, 603 (1954) and Restatement (Second) of Torts § 333 (1965)). However, an exception to the trespasser rule set forth in section 333 of the Restatement is the attractive nuisance doctrine explained in section 339. *See* Restatement (Second) of Torts §§ 333, 339 (1965).[1] Over fifty years ago, the Texas Supreme Court adopted section 339's statement of the attractive nuisance doctrine. *See Banker v. McLaughlin*, 146 Tex. 434, 208 S.W.2d 843, 847 (1948).[2] And in *Timmons*, 947 S.W.2d at 193–94, the Court reiterated its continued approval. Section 339 states:

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of

---

**1.** Section 333 also sets out other exceptions to the general trespasser rule; they include sections 335 and 337. Section 335 is entitled "Artificial Conditions Highly Dangerous to Constant Trespassers on Limited Area," and Section 337 is entitled "Artificial Conditions Highly Dangerous to Known Trespassers." *See* Restatement (Second) of Torts §§ 335, 337 (1965).

**2.** We find no case in which the Texas Supreme Court has adopted other exceptions to section 333, the general trespasser rule. However, in *State v. Shumake*, 131 S.W.3d 66 (Tex.App.-Austin 2003, no pet. h.), a case in-

volving the Recreational Use Statute, the Austin Court of Appeals recently considered sections 335 and 337. *Shumake*, 131 S.W.3d at 70, 77. Noting its reliance on the second Restatement of Torts and the Texas Supreme Court's definition of gross negligence in *Louisiana Pacific Corp. v. Andrade*, 19 S.W.3d 245, 246–47 (Tex.1999), the *Shumake* Court imposed on landowners "a higher duty of care to known trespassers injured by artificial conditions that pose a risk of serious bodily harm of which the landowner knows or should know." *Shumake*, 131 S.W.3d at 80.

death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Restatement (Second) of Torts § 339 (1965).

■■■■ Whether an attractive nuisance exists is a question of law. *Massie v. Copeland,* 149 Tex. 319, 233 S.W.2d 449, 454 (1950); *Kopplin v. City of Garland,* 869 S.W.2d 433, 441 (Tex.App.-Dallas 1993, writ denied). And whether the injured child is so young and immature that the doctrine protects the child against a condition or danger is also a question of law. *Kopplin,* 869 S.W.2d at 441. The doctrine applies only if the danger is hidden, concealed, or latent and not when it is patent or obvious in order that "care for children who are unable to recognize patent dangers is not shifted from their parents to strangers. The limitation avoids imposing on property owners a duty and liability where otherwise none would exist." *Id.* (citing *Stimpson v. Bartex Pipe Line Co.,* 120 Tex. 232, 36 S.W.2d 473, 476 (1931)).

■■■■ "When the attractive nuisance doctrine applies, the owner or occupier of premises owes a trespassing child the same duty as an invitee." *Timmons,* 947 S.W.2d at 193. And to invitees, a premises

owner or occupier must "use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition of which the owner is or reasonably should be aware." *State Dep't of Highways & Public Transp. v. Payne,* 838 S.W.2d 235, 237 (Tex.1992).

In issue one, Entergy first contends the attractive nuisance doctrine does not apply. Entergy asserts that, because of Shane's maturity, scholastic achievement, and age (almost fourteen), he appreciated the risks of riding an ATV with passengers, close to poles and guy wires. Relying extensively on *Timmons,* Entergy argues Shane's knowledge of the danger precludes appellees from meeting section 339(c)'s requirements.[3] *See Timmons,* 947 S.W.2d at 191.

In *Timmons,* a fourteen-year-old boy was electrocuted by an arc of electricity while he was climbing an electric transmission tower. *Id.* at 192–93. After spending the evening drinking beer and malt liquor at a friend's house, the boy climbed the tower, using the diagonal braces on each side. The tower had no ladder, and the boy's friends and family had warned him about the dangers of climbing the tower. The utility company had erected a barricade around the tower to prevent unauthorized persons from scaling the tower and coming near the power lines and had also posted a warning sign on one corner of the tower. The sign, however, did not specifically warn of the danger of arcing. *Id.* at 192.

The *Timmons* Court concluded that "[e]ven without such express warnings, anyone as old as Billy is charged 'with the knowledge that electric wires are ordinarily dangerous; that they should be avoided

---

**3.** "[T]he children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in com-

ing within the area made dangerous by it[.]" Restatement (Second) of Torts § 339(c) (1965).

wherever possible ... and that it is dangerous to come in close proximity to them.'" *Id.* at 194 (quoting *Cloud v. Houston Lighting & Power Co.,* 199 S.W.2d 260, 262 (Tex.Civ.App.-Galveston 1947, writ ref'd n.r.e)). "[I]gnorance of arcing is not enough to satisfy the third element of the attractive nuisance doctrine, section 339(c) of the Restatement, if the child is aware of the dangers of electricity generally. The doctrine requires only that the child realize the risk 'in coming within the area made dangerous' by the condition." *Timmons,* 947 S.W.2d at 195 (quoting Restatement (Second) of Torts § 339(c) (1965)). "[A] child who puts himself in such close proximity to a known danger like a ... high-voltage electric line so as to risk severe harm cannot be heard to say that he did not realize the danger because he did not expect harm to occur exactly as it did." *Id.*

In determining the boy, who had been warned repeatedly, was not too young or immature to appreciate the danger of climbing a tower containing high-voltage power lines, the *Timmons* Court noted the attractive nuisance doctrine ordinarily does not apply to normal fourteen-year-olds. *Id.* at 196. And it further acknowledged "the great majority" of cases applying the doctrine did so when the child involved was not more than twelve years old. *Id.* (citing Restatement (Second) of Torts § 339, cmt. c (1965)). However, the Court declined to put an age limit on beneficiaries of the attractive nuisance doctrine. *Id.* The Court recognized " 'that in our present hazardous civilization some types of dangers have become common, which an immature adolescent may reasonably not appreciate, although an adult may be expected to do so.' The test is whether 'the child is still too young to appreciate the danger.'" *Id.* (quoting Restatement (Second) of Torts § 339, cmt. c (1965) (citations omitted)).

Under *Timmons,* we must determine if Shane was too young to appreciate the danger of riding an ATV on Entergy's right of way, close to guy wires and utility poles. *See Timmons,* 947 S.W.2d at 195–96. A factor in this determination is whether the danger was latent or open and obvious. *Kopplin,* 869 S.W.2d at 441. We recognize that if he was aware of the danger generally, the attractive nuisance doctrine does not apply. *See Timmons,* 947 S.W.2d at 195–96. We consider both the nature of the danger to be appreciated as well as Shane's age or maturity. *Massie,* 233 S.W.2d at 453. We take as true the evidence favorable to the Isoms and indulge every reasonable inference and resolve any doubts in their favor. *See Rhone–Poulenc, Inc.,* 997 S.W.2d at 223. If Entergy has presented evidence entitling it to summary judgment, the burden shifts to the Isoms to present evidence creating a fact issue. *See Walker,* 924 S.W.2d at 377.

The evidence favorable to the Isoms shows the danger of the loose wire was latent. The boys could not see the loose guy wire when they left the center of the right of way to avoid the rough area. The guy wire involved in the accident was looped around an anchored guy wire. There was adequate room to maneuver an ATV between the straight guy wire and the pole. Mitchell, the ATV's driver, avoided the main guy wire but did not see the loose wire when he selected his route to avoid the ruts. Shane's neck came in contact with the loose wire and he was knocked off of the ATV. Placing covers on guy wires is a common engineering practice that provides visibility for the wires and protects them from being struck by vehicles. The loose guy wire had no cover and therefore was difficult to see. Increasing that difficulty were the ATV's motion and the proximity of the uncovered

loose wire to the main guy wire, which was covered with a broken, white cover. A vehicle driver's attention would be focused on the covered wire that was marked as an obstacle rather than the unmarked obstacle, the loose wire. Entergy's maintenance manager admitted the guy wire was not secured or marked properly. Thus, the evidence favorable to the Isoms shows the danger of the loose wire was not open and obvious.

However, Entergy presented substantial evidence supporting its argument that Shane's maturity, scholastic achievement, and age (almost fourteen) preclude appellees from meeting section 339(c)'s requirements. Shane's parents testified he was a good student, making the A–B honor roll and receiving certificates for his reading and math achievement. Shane was a good baseball pitcher and was active in other sports. He obeyed his parents and never had been in trouble for violations of the law. Shane's father watched him operate the ATV for over two weeks and determined Shane was competent to drive it. Shane's father also testified that Shane was mature enough and experienced enough to drive the ATV, and that Shane understood the risks of operating the vehicle. Certain dangers were evidenced in the warning labels on the ATV itself; these warnings cautioned against persons under sixteen operating the vehicle and also cautioned against riding as a passenger.

Entergy also showed that before the accident occurred Mitchell and Aaron, the two boys with Shane, appreciated the dangers of riding an ATV. Mitchell, the thirteen-year-old who was driving the ATV at the time of the accident, testified he understood the risks of operating an ATV; he knew passengers' weight shifts could create problems; he knew excessive speed could result in a loss of control; he knew if he did not follow the warnings or operated the ATV improperly, serious injury or death could occur. Aaron also knew injury could result from not following the warnings; that passengers were not to ride on an ATV; that passengers' can cause weight shifts and make controlling an ATV difficult; and that persons under sixteen should not operate an ATV.

Entergy's evidence shows Shane was old enough to appreciate the danger of riding an ATV on Entergy's right of way, close to guy wires and utility poles. *See Timmons,* 947 S.W.2d at 195–96. Unless appellees presented evidence to the trial court showing Shane was too young to appreciate this danger, Entergy disproved an essential element of the Isoms' case and was entitled to summary judgment as a matter of law. *Walker,* 924 S.W.2d at 377; *Doe v. Boys Clubs,* 907 S.W.2d at 477.

The Isoms argue generally that a thirteen-year-old should not be expected to realize the danger of an unmarked and improperly configured guy wire that could easily be overlooked by someone riding an ATV. However, they cite no evidence presented to the trial court showing Shane was too young to realize the dangers of riding the ATV on the right of way, a location involving being close to poles and guy wires. Instead, appellees focus on the lack of a specific age limit for applying the attractive nuisance doctrine and on the hidden nature of the loose wire.

We agree the summary judgment evidence favorable to the Isoms shows it would have been difficult for Shane to appreciate the danger of the loose wire. But, as explained in *Timmons,* ignorance of a specific danger "is not enough to satisfy the third element of the attractive nuisance doctrine, section 339(c)" if the child is aware of the general danger. *Timmons,* 947 S.W.2d at 195. Here, the specific danger was the loose

wire and in *Timmons* the specific danger was the arcing of electricity. Here, the general danger was riding an ATV on the right of way in the vicinity of poles and guy wires and in *Timmons* the general danger was electricity. "The doctrine requires only that the child realize the risk 'in coming within the area made dangerous' by the condition." *Id.* at 195 (quoting Restatement (Second) of Torts § 339(c) (1965)).

As the Isoms did not present evidence creating a fact issue, Entergy established as a matter of law that Shane was aware of the dangers of riding the ATV in the vicinity of poles and guy wires. Thus, Entergy disproved an essential element of the Isoms' attractive nuisance cause of action, namely section 339(c) of the Restatement (Second) of Torts, and was entitled to summary judgment that the attractive nuisance doctrine does not apply. We need not consider Entergy's argument that section 339(d) of the Restatement (Second) of Torts also precludes application of the doctrine. Issue one is sustained.

### Gross Negligence

■ On the Isoms' gross negligence cause, Entergy filed motions for both a traditional summary judgment and a no-evidence summary judgment. In its second issue, Entergy contends the trial court should have granted these motions. We first consider Entergy's argument relating to its no-evidence summary judgment motion.

To establish Entergy's gross negligence, the Isoms must prove two elements: (1) viewed objectively from Entergy's standpoint, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) Entergy must have had actual, subjective awareness of the risk involved, but nevertheless pro-

ceeded in conscious indifference to the rights, safety, or welfare of others. *See Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 23 (Tex.1994).

Included in Entergy's motion for summary judgment was the contention there was no evidence Entergy had actual, subjective awareness of the risk involved, and no evidence Entergy proceeded with conscious indifference to the rights, safety, or welfare of others. In order to raise a genuine issue of material fact, the Isoms were required to present summary judgment evidence that Entergy knew about the danger, but its acts or omissions demonstrated it did not care. *See Mobil Oil Corp. v. Ellender,* 968 S.W.2d 917, 921 (Tex.1998); *see Allen,* 28 S.W.3d at 231.

Neither in their response to Entergy's motion for summary judgment nor in their appellate brief do the Isoms contend there is any evidence Entergy had "actual, subjective awareness" of the loose wire. Issue two is sustained.

### Punitive Damages

■ In its third issue, Entergy correctly contends the Isoms cannot recover punitive damages where their compensatory damage claim is precluded as a matter of law. *See Wright v. Gifford–Hill & Co., Inc.,* 725 S.W.2d 712, 713–14 (Tex.1987). Issue three is sustained.

The trial court's order denying Entergy's motions for summary judgment on the issues of attractive nuisance and gross negligence is reversed and judgment is rendered that the Isoms take nothing.

REVERSED AND RENDERED.

DON BURGESS, Justice, dissenting.

I respectfully dissent. Entergy only asks this court to consider whether the "attractive nuisance" doctrine applies to this case. This is certainly an issue be-

cause the status of Shane Isom determines the duty owed to him.[1]  I believe there is some controverted evidence about Shane's level of maturity; thus whether the doctrine applies requires a factual resolution by the jury.

However, there is an additional reason the denial of the summary judgment should be affirmed.  Without naming it as such, the Isoms present the "gratuitous licensee" doctrine.  In their original petition, the Isoms state:

> At all times material to the incident ... the Interurban right-of-way was heavily traveled by people of all ages operating various motorized vehicles ... While Defendant herein maintains the Interurban right-of-way is private property, Defendant failed and/or refused to place any warning signs, barriers and/or gates on their property to deter people from entering.  Further Defendant failed and/or refused to erect "no trespassing" and/or "keep off property" and/or "private property" signs.  Through their actions/inactions, Defendant allowed the general public to use this property without restriction.

> At this time of the incident, there was a dangerous condition on the Interurban right-of-way of which Defendant knew or should have known. ... Defendant knew or had reason to know that individuals of all ages, including children, would frequent the area of the right-of-way where this dangerous condition existed.

In their response to Entergy's motion for partial summary judgment, the Isoms argued "Entergy's improperly marked and configured guy wires created an unusual and deceptive hazard" and "it was well known that the interurban right-of-way was a popular place for children to ride ATVs." Again, this speaks in terms of the "gratuitous licensee" doctrine.

This court in *Murphy v. Lower Neches Valley Authority*, 529 S.W.2d 816, 820 (Tex.Civ.App.-Beaumont 1975), *rev'd on other grounds*, 536 S.W.2d 561 (Tex.1976) recognized the "gratuitous licensee" doctrine stating:

> While the term of "gratuitous licensee" is not in common usage in Texas in cases of this nature, it has been defined as "one whose presence upon the premises is solely for the visitor's own purpose in which the possessor of the property has no interest, either business or social, and to whom the privilege of entering is extended as a mere favor by express consent or by general custom." *Gonzalez v. Broussard*, 274 S.W.2d 737, 738 (Tex.Civ.App.-San Antonio 1954, writ ref'd n.r.e.) (citing s 331 of the Restatement of Torts).  That particular section of the Restatement was omitted in the second edition but was carried over in substantially the same terms into s 330 (comment h(1)).  In *Gonzalez*, the suit was brought on behalf of a minor who

---

1. The extent of a landowner's liability for injuries caused by a condition existing on the land depends on the status of the injured person.  Thus, the scope of a landowner's duty depends on whether, at the time of the injury, the person on the land was an invitee, a licensee, or a trespasser.

To invitees, the landowner owes a duty to exercise reasonable care to keep the premises in a reasonably safe condition for use by the invitee.  To licensees, the landowner owes a duty to warn of or to make safe hidden dangers known to the landowner and a duty not to intentionally, wilfully, or through gross negligence cause injury.  And to trespassers, a landowner owes only a duty not to intentionally, wilfully, or through gross negligence cause injury.

While this traditional classification system has been subject to debate, it remains the law in Texas.

*Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 660 (Tex.1999)(Enoch, J., concurring).

had tripped over some rocks which had been placed on the playground of a drive-in theater by others. The owner had allowed other children to play on the premises; he knew of the presence of the rocks which the children brought, and such practice had continued for a long period of time. The child was held to be a "gratuitous licensee."

Other examples of "gratuitous licensees" include situations where a trespass has been tolerated for such a sufficient period of time that the public believes it has the "permission" of the possessor to use the property, e.g., such as the use of a pathway through a coal company's property [*Markovich v. Jefferson Coal & Coke Corporation,* 146 Pa.Super. 108, 22 A.2d 65 (1941)]; where people have used a railroad's right-of-way for a period of time without manifested objection from the company, those people have been classified as gratuitous licensees rather than trespassers [*Louisville & Nashville Ry. v. Blevins,* 293 S.W.2d 246 (Ky.App.1956); accord: *Gulf, C. & S.F. Ry. Co. v. Matthews,* 99 Tex. 160, 88 S.W. 192 (1905); *Jara v. Thompson,* 223 S.W.2d 941 (Tex.Civ.App.-San Antonio 1949, writ ref'd)]. A gratuitous licensee has also been succinctly defined as a licensee who is "not a business visitor." *Laube v. Stevenson,* 137 Conn. 469, 78 A.2d 693, 695, 25 A.L.R.2d 592 (1951).

Clearly this doctrine was raised by the Isoms and not addressed by Entergy in its motion for partial summary judgment. As stated by our Supreme court in *McConnell v. Southside Independent School District,* 858 S.W.2d 337, 342 (Tex.1993):

> When the motion for summary judgment clearly presents certain grounds but not others, a non-movant is not required to except. This distinction was recognized and correctly resolved in *Roberts v. Southwest Texas Methodist Hospital,* [811 S.W.2d 141 (Tex.App.-San Antonio 1991)] when the court held:

> > When a motion for summary judgment asserts grounds A and B, it cannot be upheld on grounds C and D, which were not asserted, even if the summary judgment proof supports them and the responding party did not except to the motion.

811 S.W.2d at 146. Why should a non-movant be required to except to a motion expressly presenting certain grounds and not others? The only effect of such a rule would be to alert the movant to additional unasserted grounds for summary judgment.

In this context, the majority should not have issued a rendition. They are in effect rendering a final summary judgment which includes more relief than was requested in the motion. The proper judgment should be a rendition on the "attractive nuisance" doctrine issue, but as to all causes of action and issues not expressly urged in the motion for summary judgment, i.e., the "gratuitous licensee doctrine" issue; there should be a remand. *IBP, Inc. v. Klumpe,* 101 S.W.3d 461, 468–469 (Tex.App.-Amarillo 2001) (citing *Bandera Elec. Coop., Inc. v. Gilchrist,* 946 S.W.2d 336, 337 (Tex.1997)).

I would affirm the denial of the summary judgments.