# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00234-CV

**Gary Newton, Appellant**

**v.**

**Kenneth Williams, Lesia W. Jones, John H. Gomez, and Benita Gomez, Appellees**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT NO. 28,152, HONORABLE CARSON TALMADGE CAMPBELL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N[1]

Gary Newton appeals from the trial court's judgment in favor of Kenneth Williams, Lesia W. Jones, John H. Gomez, and Benita Gomez on Newton's claims related to access to real property located in a platted subdivision in Bastrop County. We will affirm in part and reverse and remand in part.

## BACKGROUND[2]

In August 2000, Newton purchased Lots 1 through 14, comprising Block 9 of the J.C. Madison Addition in Bastrop County ("Block 9") at a sale held by the Bastrop County Sheriff

---

[1] Notice of appeal for this case was originally filed in this Court in March 2016, at which time the case was transferred to the El Paso Court of Appeals in compliance with a docket-equalization order issued by the Texas Supreme Court. On April 12, 2018, the Texas Supreme Court ordered that certain cases be transferred back to this Court from the El Paso Court, and we consider this appeal pursuant to that order. *See* Misc. Docket No. 18-9054 (Tex. Apr. 12, 2018) (per curiam).

[2] The facts set forth herein are derived from the testimony and exhibits admitted at trial.

pursuant to an Order of Sale issued by the Bastrop County District Clerk.[3] The conveyance was made by reference to the J.C. Madison Addition "as shown by map or plat thereof, recorded in Volume 5, Page 2, Deed Records of Bastrop County, Texas." The referenced plat of the J.C. Madison Addition includes a dedication "to the Public, and for Public use" of the streets and alleys shown on the plat. The dedication to the public of the streets and alleys identified in the plat was approved by Bastrop County by order of the Commissioners Court. The plat shows that Block 9 is bounded by four dedicated streets: (1) Van Buren Street, adjacent to Block 9's northern boundary; (2) Adams Street, adjacent to Block 9's western boundary; (3) Jefferson Street, adjacent to Block 9's eastern boundary; and (4) Jackson Street, adjacent to Block 9's southern boundary. Block 8, which is owned by Williams, is located south of Block 9 on the south side of Jackson Street. Lots 1 and 12 of Block 4, which are owned by Jones, are located west of Block 8 on the west side of Adams Street, and Block 11, which is owned by Williams and his father, is located east of Block 8 on the east side of Jefferson Street. The plat shows that Houston Street runs adjacent to Blocks 4, 8, and 11 along their southern boundaries. At the time of trial, Houston Street had been constructed and was used by Jones and Williams to access their properties in Blocks 4, 8, and 11. Jones had also improved Adams Street almost to Jackson Street and was using it as a driveway to access Lot 12, Block 4, on which she had placed a manufactured home. None of the streets adjacent to Block 9 (Van Buren, Adams, Jefferson, and Jackson) had been constructed, nor had Jefferson Street between Blocks 8 and 11.

---

[3] The Order of Sale issued after the district court rendered judgment in a suit filed by the Elgin Independent School District to collect unpaid property taxes assessed against Block 9. *See* Tex. Tax Code §§ 33.41 (at any time after its tax on property becomes delinquent taxing unit may file suit to foreclose lien securing payment of tax); 33.53 (if judgment in suit to collect delinquent tax is for foreclosure of tax lien, court shall order property sold in satisfaction of amount of judgment).

In April 2011, Newton entered into a Contract for Deed pursuant to which Enmanual Cruz agreed to purchase Block 9 for $35,000. Newton testified that in late March or early April 2011, he and Cruz attempted to enter Block 9 from Houston Street by walking north on what they believed to be the location of Adams Street and Jefferson Street, but were prevented from doing so by John Gomez.[4] Newton also testified that when he began marketing the property in late 2009 or early 2010 he had attempted to access Block 9 using Adams Street. Newton testified that Jones told him that what he believed was Adams Street was her driveway and that he could not come down it. According to Newton, when he showed Jones the plat depicting Adams Street as a dedicated street she stated that it was her driveway and that he could not use it to get to Block 9. Newton testified that when he asked Williams and Jones why the rights of way created by the dedication of Adams Street and Jefferson Street did not exist they responded that "they were old."

In March 2011, Newton sent letters to Williams and Jones demanding that they remove what he described as obstructions placed on the 40-foot rights of way identified on the plat as Adams Street, Jefferson Street, and Jackson Street. Newton described the obstructions as vehicles, trailers, fences, fence posts, and vehicle parts that he believed had been placed there to impede his ability to use the rights of way to access Block 9. Newton stated that Bastrop County Commissioner Lee Dildy was willing to meet with them to mediate any disputes about property boundaries. An attorney representing Williams, Jones, and John Gomez responded to Newton's letter. The attorney's letter stated:

---

[4] John Gomez and Benita Gomez purchased Block 11 from Lillian Reese in May 2011 and then sold it to Williams and his father, J.D. Williams, in October 2012. Gomez testified that he purchased the property because he wanted to build a workshop on it and that he sold the property because he decided he needed something closer to his home in Pflugerville.

It has come to our attention that you and a potential tenant/buyer and/or surveyor have entered and crossed our clients' property while my clients were out one day (J.C. Madison Edition [sic], Blocks 11, Lots 1 through 8 and J.C. Madison Edition [sic] Block 4, Lots 1, 10, 11, and 12, J.C. Madison Edition [sic] Block 11 [sic], Lots 1-8) to access your property in Block 9 of the same Edition [sic].

Please be advised that any entry onto the property of my clients is trespass and we will seek any and all legal remedies, including arrest if appropriate, legal fees and damages should you or your agents (anyone working for your [sic] or under your supervision) enter their property again.

As a long time owner of Block 9, you are aware, and have been aware since the time of its purchase by you at a tax sale over 5 years ago that your property does not have access through the property of my clients. My clients' property has been fenced post to post for well over 15 years, with the occasional exception of minor repairs, and the personal driveways of our clients are not your property. My clients have repeatedly told you to stay off their property, and have had to gate the property to keep you out. You will need to access your property from a different direction.

As you are also aware, the developer of the Madison Edition [sic] abandoned the platted roads shown adjacent to my clients' property (which roads were never even constructed) over 30 years ago, and since that time my clients have fenced the property, paid the taxes and held the property out as their own. The County does not, and has not, owned or maintained any roads in the Madison Edition [sic].

Newton responded to this letter, in part, as follows:

It was good to speak with you today. [] Please let me know all statutory law, case law, and/or legal theories your firm or Mr. Williams has as to why the 40 foot right of ways on three sides of his property do not exist or the legal basis for him to block them and deny me access to my land. If you look on Bastrop CAD's website you can see the maps of the right of ways on three sides of his property. These maps are based upon the plat filed with Bastrop County in 1947. Mr. Williams bought his property from Bastrop County in 2005 and if you look at his deed you will find that it conforms to this plat.

If the right of ways are blocked past April 11 by Mr. Williams I will proceed to exercise my full legal right to access my property.

> Litigation is not my preference. Multiple times I have offered to sit down with Mr. Williams and his representatives and look at all plats, surveys and other information relevant to our dispute and work through the differences about property lines.

After receiving no response to this letter, counsel for Newton sent a letter to counsel for Williams, Jones, and Gomez. The letter stated, in part:

> Mr. Newton needs unimpeded access to and use of either Adams or Jefferson Street, and enough of Jackson Street where it crosses Adams or Jefferson to get to his property. The quickest and least expensive way to do this is for your client to convey any and all interests he may have in the streets to Mr. Newton, and for Mr. Newton to convey any and all interests he may have in the street not chosen, either Adams or Jefferson, and the remainder of Jackson Street, to parties to the negotiations.

The letter also proposed that the parties meet to go over the plats and come to a resolution. Such a meeting never took place and in August 2011, Newton filed suit against Williams, Jones, and the Gomezes asserting causes of action for tortious interference with access to real property and tortious interference with a contract to sell real property. Newton also sought a declaration that obstruction of the streets was wrongful and an injunction compelling removal of all obstructions from Adams, Jefferson, and Jackson Streets. Newton sought to recover monetary damages he alleged resulted from cancellation of the Contract for Deed as well as exemplary damages, attorneys' fees, and court costs. Jones and Williams filed general denials and asserted that "all relevant roadways have been abandoned," that Newton's claim to a right to use the roadways was barred by limitations, estoppel and laches, or extinguished by abandonment and prescription.

After conducting a one-day bench trial, the district court rendered judgment against Newton on his tortious interference claims and denied his request for declaratory and injunctive

5

relief. At Newton's request, the trial court issued findings of fact and conclusions of law in support of the final judgment. This appeal followed.

## DISCUSSION

In twenty-five appellate issues and sub-issues, Newton challenges the trial court's judgment that he take nothing by his claims for tortious interference with access to real property (issue 13), tortious interference with contract (issue 14), and its denial of his claims for injunctive and declaratory relief (issues 15 and 16). Newton also challenges the court's denial of his request for actual damages (issue 17), exemplary damages (issue 18), attorneys' fees, and costs (issue 19). The remaining issues constitute challenges to the legal conclusions and fact findings made by the trial court in support of the judgment. Newton challenges the following fact findings (FOF) and conclusions of law (COL):

> FOF 1: A plat in the J.C. Madison Addition was filed for record on January 20, 1947 and recorded on January 23, 1947. In 1972, J.D. Williams, the father of Defendant Kenneth Williams and Lesia W. Jones, acquired Lots 1, 10, 11 and 12 out of Block 4, Lots 1-8 out of Block 8. Lots 1-8 out of Block 11 were the property of Kenneth Williams. Blocks 4, 8 and 11 are adjacent to each other and separated on the original plat by 40-foot wide strips.

> FOF 2: During the period from 1972 through 1996, Block 4, Lots 1, 10, 11 and 12 and Block 8, Lots 1-8 and Block 11, Lots 1-8 were treated as a single piece of property. The 40-foot wide spaces between each of said blocks were closed off by continuous fencing and cattle were grazed on the subject blocks.

> FOF 3: At the time of the acquisition of the lots in question by J.D. Williams, there had been no use by the public of the 40-foot wide strips as roadways, no roadways had been installed, and no maintenance or other attempts to maintain a roadway had occurred. During a period from 1972 through 1996, the fence remained in place, blocking public access to the roadways between the three named lots.

6

FOF 4:  In 1996, Defendant Lesia Jones acquired title to Block 4, Lots 1, 10, 11 and 12 by a Gift Deed from her father, J.D. Williams.

FOF 5:  Defendant Kenneth Williams acquired title to Block 8, Lots 1-8 by a Gift Deed from his father in 1996.

FOF 8:  Lesia W. Jones uses and occupies Block 4, Lots 1, 10, 11 and 12, including the 40-foot wide strip adjacent to said property, as a part of her homestead.

FOF 9:  Defendant Kenneth Williams uses and occupies Block 8, Lots 1-8, including the 40-foot wide strip separating Block 8 from Block 4 and Block 11 as a portion of his homestead.

FOF 11:  There is no evidence that any member of the public ever used any portion of the two 40-foot wide strips for roadway purposes.

FOF 12:  No member of the public has made use of any of the 40-foot wide strips as roadways since 1972.

COL 1:  The roadway strips between Blocks 4, 8 and 11 owned by Defendants at the time of the suit were abandoned under Section 251.057 of the Texas Transportation Code in 1993.

COL 2:  The roadway strips between Blocks 4, 8 and 11 were abandoned under Common Law abandonment.

COL 3:  The property having been abandoned as roadway could not be re-established as a public road except in the manner provided for establishing a new road.

COL 4:  Gary Newton was without legal authority to access Block 9 using the 40-foot wide strips between Blocks 4, 8, and 11 because those strips had been abandoned as roadway.

COL 5:  Plaintiff, Gary Newton is bound by the knowledge and actions of his predecessors in title and the rights and parties in possession.

COL 6:  Gary Newton is barred from asserting a right to open the roadways for access to Block 9 under the theories of Laches and Equitable Estoppel.

*Abandonment of J.C. Madison Addition Dedicated Streets*

We first consider whether the trial court correctly concluded that Adams Street and Jefferson Street, which had been dedicated for public use but were never constructed, were abandoned under section 251.057 of the Texas Transportation Code. *See State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996) (trial court's conclusions of law are reviewed de novo and reviewing court affords no deference to lower court's decision). Section 251.057 provides, in pertinent part:

> (a) A county road is abandoned when its use has become so infrequent that one or more adjoining property owners have enclosed the road with a fence continuously for at least 20 years. The abandoned road may be reestablished as a public road only in the manner provided for establishing a new road.

Tex. Transp. Code § 251.057(a). In order for this statute to apply, Adams Street and Jefferson Street must qualify as "county roads." The J.C. Madison Addition plat identifies these streets as dedicated for public use. Streets and roads on an approved plat that are dedicated to the public are public roads, but they are not county roads unless the commissioners court has accepted the roads into the county road system. *See Miller v. Elliot*, 94 S.W.3d 38, 45 (Tex. App.—Tyler 2002, pet. denied); *Commissioners' Court v. Frank Jester Dev. Co.*, 199 S.W.2d 1004, 1007 (Tex. Civ. App.—Dallas 1947, writ ref'd n.r.e.) (public road is not necessarily part of county road system). The trial court did not make any express finding that Adams Street and Jefferson Street had been accepted into the Bastrop County road system and there is no evidence to support any such implied finding. Moreover, there was no evidence that Bastrop County had ever improved the road. *See* Tex. Transp. Code § 253.011 (road improved under chapter 253 is county road). Roads that are not county roads are not subject to abandonment pursuant to Transportation Code section 251.057. *Id.* § 251.057(a).

Furthermore, even if Adams Street and Jefferson Street could be considered county roads, there was no evidence at trial that "one or more adjoining property owners have enclosed the road with a fence continuously for at least 20 years." *Id.* The testimony at trial was that when J.D. Williams purchased his property in 1969, there was a fence running along Houston Street, the southern boundary of Williams's property. That fence did not "enclose" Adams Street or Jefferson Street. Williams testified that he did not build the fence himself and that at some point in time he tore part of it down. Williams also testified that he did not build any other fences other than "a hot fence, electric fence for my cattle." Williams did not state when he built the electric fencing, where it was located, or how long it was in place.[5] Although the trial court found that "[t]he 40-foot wide spaces between each of said blocks were closed off by continuous fencing," there is no evidence to support that finding. *See Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991) (trial court's findings of fact are reviewable for legal sufficiency of evidence by same standard as applied in reviewing legal sufficiency of evidence supporting jury's finding). The trial court erred in concluding that Jefferson Street and Adams Street were abandoned pursuant to Transportation Code section 251.057.

Newton also challenges the trial court's conclusion that Adams Street and Jefferson Street were abandoned under common-law abandonment. To show common-law abandonment, one must show intent to abandon and acts of relinquishment. *Maples v. Henderson Cty.*, 259 S.W.2d 264, 267 (Tex. Civ. App.—Dallas 1953, writ ref'd n.r.e.). "Common-law abandonment 'occurs when

_____

[5] When asked how long the electric fence stayed up, Williams responded "That, I don't remember how long. When I sold out of cows." There was no evidence of the date Williams sold his cows.

the use for which the property is dedicated becomes impossible, or so highly improbable as to be practically impossible, or where the object of the use for which the property is dedicated wholly fails.'" *Rutledge v. Staner*, 9 S.W.3d 469, 471 (Tex. App.—Tyler 1999, pet. denied) (quoting *Griffith v. Allison*, 96 S.W.2d 74, 77 (Tex. 1936)). There is no evidence that the purpose of either Jefferson Street or Adams Street has become practically impossible or that the use for which the property was dedicated has wholly failed. "The purpose of a public road, particularly one local in character, is to provide access to property abutting upon it, as well as a thoroughfare between distant points." *Id.* Here, the purpose of Jefferson Street and Adams Street was to provide access to, among others blocks, Block 9 of the J.C. Madison Addition. These streets have not lost their purpose as a public road to provide landowners in the J.C. Madison Addition access to their property. Common-law abandonment has not occurred.[6]

Several of the trial court's findings seem to suggest that Williams and Jones have met the elements of adverse possession of Jefferson Street and Adams Street that defeat the right of others, including Newton, to use the roads for access to lots in the J.C. Madison Addition. However, "a person may not acquire through adverse possession any right or title to real property dedicated to public use." Tex. Civ. Prac. & Rem. Code § 16.030(b).[7] Nor can Newton be barred by the equitable

---

[6] We also note that the county's failure to maintain a road does not establish common-law abandonment, nor does non-use of a road. *See Rutledge v. Staner*, 9 S.W.3d 469, 472 (Tex. App.—Tyler 1999, pet. denied); *Compton v. Thacker*, 474 S.W.2d 570, 574 (Tex. Civ. App.—Dallas 1971, writ ref'd n.r.e.).

[7] Although we will not discuss the issue in detail, we note that the evidence adduced at trial does not support a finding that either Williams or Jones established title to the streets by virtue of the 5-, 10- or 25-year limitations statutes. *See* Tex. Civ. Prac. & Rem. Code §§ 16.025 (setting forth elements of adverse possession under 5-year statute as requiring claimant to continuously (1) claim title under duly registered deed; (2) pay taxes on property; and (3) cultivate, use, or enjoy property),

theories of laches or estoppel from exercising his right to use the roads dedicated for public use in the J.C. Madison Addition plat. The trial court erred in refusing to declare that Williams and Jones could not obstruct the public roads in the J.C. Madison Addition, including Jefferson Street and Adams Street. The trial court also erred in refusing to enjoin Williams and Jones from continuing to obstruct these public roads.[8]

***Tortious Interference Claims***

We next consider the trial court's denial of Newton's claim that Williams, Jones, and Gomez tortiously interfered with his contract to sell Block 9 to Cruz. The elements of interference with an existing contract are (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss. *Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) (citing *ACS Inv'rs, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)). On appeal, Newton asserts that "[t]he trial court should not have denied [his] claim of tortuous [sic] interference with [his] contract to sell real property, as the evidence establishes as a

.026-.027 (setting forth elements of adverse possession under 10- and 25-years statutes as requiring claimant to cultivate, use, or enjoy property in continuous and hostile manner); *see also id.* § 16.021(1) ("'Adverse possession' means an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person."). The evidence that J.D. Williams grazed cattle and repaired a fence that already existed at the time he purchased his lots in the subdivision is insufficient to support a finding of adverse possession. *See Hopkins v. State*, No. 03-07-00253-CV, 2009 WL 3806160, at *7 (Tex. App.—Austin Nov. 13, 2009, no pet.) (mem. op.) (mere grazing of land incidentally enclosed by a fence created by others cannot support a claim of adverse possession). Williams was also unable to recall how many years he used the land for grazing cattle.

[8] Because the Gomezes no longer own property in the J.C. Madison Addition, it was not error for the trial court to deny Newton's request for declaratory and injunctive relief as to them.

matter of law all the vital facts supporting a conclusion that the collapse of [his] attempt to sell Block 9 was directly the result of Appellees' behavior, which forced Appellant to agree with his buyer to cancel their Contract for Deed." An appellant attacking the legal sufficiency of an adverse finding on which he carried the burden of proof must demonstrate that the evidence conclusively establishes, as matter of law, the vital facts in support of the issue. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

The only evidence Newton identifies in his appellate brief is an Agreement for Cancellation of Contract for Deed executed by Newton and Cruz, which recites that the agreed cancellation was "based upon and arises out of the wrongful acts of third parties who have blocked access to the Property along the roads, streets and alleys which were dedicated to the public as such, making it impossible for Purchaser to access and enjoy the Property." Newton does not identify evidence establishing, as a matter of law, that Williams, Jones, or Gomez placed obstructions in the areas dedicated as public roads with the intent of interfering with Newton's contract. Rather, the evidence at trial indicated that the intent was to prevent Newton from accessing Block 9 by crossing what they believed, albeit incorrectly, to be their property. *See Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001) (there is no tortious interference if interference is, at most, only incidental result of conduct engaged in for another purpose). There is no evidence that Williams or Jones even knew that Newton had entered into a contract with Cruz for the sale of Block 9 at the time they first denied Newton access to Block 9. *See Southwestern Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992) (tortious interference requires finding that defendant performed certain acts with knowledge or belief that interference with contract would result from that conduct). Newton testified

12

that at the time he entered into the contract with Cruz he "knew that Ms. Jones and Mr. Williams viewed it as their property and didn't want us using the platted right-of-way." We cannot say that the evidence conclusively establishes, as a matter of law, that obstructing the roads dedicated to public use in the J.C. Madison Addition constituted a willful and intentional act of interference with Newton's contract with Cruz. *See id.* (element of intent is established when actor desires to cause consequences of his or her acts or believes those consequences are substantially certain to result from those acts).

Newton also challenges the trial court's denial of his claim of "tortious interference with access to real property." While Texas law recognizes a cause of action for tortious interference with property rights, we are unaware of a cause of action for tortious interference with *access* to real property. Newton provides no authority to support the existence of such a claim. Moreover, the remedy Newton requested in his petition—removal of the obstructions to the roadway and use of the roadways to access his property—may be provided by the trial court in the form of declaratory and injunctive relief.[9]

***Actual and Exemplary Damages***

Newton asserts that the trial court erred in failing to award him $45,000 in actual damages arising out of the alleged tortious interference with his contract with Cruz and in failing to

---

[9] Additionally, Newton's briefing of this issue consists of only three sentences and contains no citations to the record or to any legal authority related to this claim. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *Maverick Cty. v. Railroad Commission of Tex.*, No. 03-14-00257-CV, 2015 WL 9583873, at *10 (Tex. App.—Austin Dec. 29, 2015, pet. denied) (mem. op.) (when appellant offers no discussion or analysis of argument it is waived).

13

award him exemplary damages. Because we affirm the trial court's conclusion that Newton failed to establish the elements of tortious interference with contract, there is no basis for an award of damages. Exemplary damages are not available unless the plaintiff establishes that it sustained actual loss or injury as the result of an underlying tort. Tex. Civ. Prac. & Rem. Code § 41.004(a); *Federal Express Corp. v. Dutschmann*, 846 S.W.2d 282, 284 (Tex. 1993) ("Recovery of punitive damages requires a finding of an independent tort with accompanying actual damages."). A plaintiff cannot recover punitive damages if its compensatory damage claim is precluded as a matter of law. *Entergy Gulf States, Inc. v. Isom*, 143 S.W.3d 486, 494 (Tex. App.—Beaumont 2004, pet. denied). Because Newton did not recover on his tort claims, the trial court properly declined to award actual or exemplary damages.

### *Attorneys' Fees*

Newton asserts that the trial court erred by refusing to award him attorneys' fees and costs. Having denied all of Newton's claims, there was no basis for the trial court to award him fees. We have, however, reversed and remanded the cause to the trial court for entry of appropriate declaratory and injunctive relief. The Texas Uniform Declaratory Judgments Act provides that the court may award costs and reasonable and necessary attorneys' fees "as are equitable and just." Tex. Civ. Prac. & Rem. Code § 37.009. In the present case, our reversal of the trial court's judgment denying Newton declaratory relief may affect whether an award of attorneys' fees is equitable and just. *See Sava Gumarska In Kemijska Industria D.D. v. Advanced Polymer Scis., Inc.*, 128 S.W.3d 304, 324 (Tex. App.—Dallas 2004, no pet.) (on remand after reversal of declaratory judgment ruling trial court may reconsider attorneys' fee award). On remand, the trial court may reconsider whether to

14

award attorneys' fees under the declaratory judgments act, to whom any such fees may be awarded, and the reasonable and necessary amount of any such attorneys' fees, if awarded. *See Arthur M. Deck & Assocs. v. Crispin*, 888 S.W.2d 56, 62 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (in declaratory judgment action, trial court may award either side costs and reasonable attorneys' fees).

## CONCLUSION

For the reasons stated in this opinion, we reverse the portion of the trial court's judgment denying Newton's request for declaratory and injunctive relief. We remand the cause to the trial court to provide the appropriate declaratory and injunctive relief regarding Jefferson Street, Adams Street, and Jackson Street in the J.C. Madison Addition. On remand, the trial court may also reconsider whether to award attorneys' fees pursuant to section 37.009 of the Texas Uniform Declaratory Judgments Act. The remainder of the trial court's judgment is affirmed.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed in Part, Reversed and Remanded in Part

Filed:   July 10, 2018

15